WILLIAM H. BEAN AND EUGENE E. BEAN, EXECUTORS
OF LAST WILL AND TESTAMENT OF JACOB
BEAN, DECEASED v. MINNESOTA MUTUAL
LIFE INSURANCE COMPANY.[1]

December 23, 1921.

No. 22,592.

**Usury—single or compound interest—construction of agreement.**

A substituted policy of life insurance was antedated to the date of the original policy. To provide the reserve which the company would have had on hand if premiums had in fact been paid by the insured from the date of the original policy, an agreement was made that the

[1]Reported in 185 N. W. 946.

new policy should be subject to a lien for an amount stated, said amount to bear interest and compound interest if interest was not paid at the end of each year. There was no obligation to pay the amount of the lien or interest and no power to sue or to terminate the policy in the event of nonpayment. Held, there was no violation of our statute forbidding compounding of interest in certain cases.

Action in the district court for Ramsey county to recover $2,687.88 upon two policies of life insurance. The case was tried before Olin B. Lewis, J., who made findings and ordered judgment for $1,750. Plaintiffs' motion to amend the findings or for an order granting a new trial, was denied. From the judgment entered pursuant to the order for judgment and particularly from that part of the judgment which permitted defendant to compound interest on the policy liens involved, plaintiffs appealed. Affirmed.

*Clapp & Macartney*, for appellants.

*Butler, Mitchell & Doherty*, for respondent.

HALLAM, J.

This action was brought to recover on two policies of life insurance. The only question is whether certain liens, one on each policy, should be increased by the addition of compound or simple interest.

Defendant was organized in 1880 on the co-operative assessment plan. Mortuary assessments were levied from time to time to meet current death claims. No reserve was accumulated. In 1898 the plan was changed to a stipulated premium plan by which premiums were made level or fixed during the life of the policy and were in amount more than sufficient to cover current mortality cost. A plan was also adopted by which certificate holders were given an option to exchange their certificate for new forms of policies on the legal reserve plan and also the option to have their new policies dated back to the date of their original certificates, with premiums based on their age at the date of issuance of the original certificates, and, in such event, in order to make good the reserve which said policy should have accumulated, the policyholder was required to consent to the creation of a lien upon his new policy equal in amount

tc the accumulated reserve which the company would have had on hand if premiums had in fact been paid by the insured from the date of the original membership to the date of the exchange.

Jacob Bean was a member and certificate holder prior to 1898. On July 23, 1900, he made written application to the company for the exchange of two certificates held by him. The applications contained this language, varying amounts and details to suit the particular facts in each case:

"Said policy hereby applied for shall be issued subject to a lien equal to the reserve, to-wit: Thirteen Hundred and Seventy-eight and 48/100 Dollars ($1,378.48) that would have accumulated on such policy at this time had it in fact been issued at the date of my original certificate and which will be required to be held for my new policy at this time (computed according to the Actuaries' or Combined Experience Table of Mortality, on the basis of four per cent interest), less the amount to be credited me by the Association on account of my past payments, to-wit: One Hundred and Ninety-six and 87/100 Dollars ($196.87), and that said net lien, to-wit: Eleven Hundred and Eighty-one and 61/100 Dollars ($1,-181.61), shall bear interest at the rate of five per cent per annum, which interest, if not paid in cash at the end of each year, shall be added to said lien and bear interest at the same rate and on the same terms. Said lien, principal and interest shall continue until the maturity of said policy, and shall be paid out of the amount insured thereby unless otherwise paid prior thereto; provided, however, that if the amount of said lien, with the accumulated interest, shall ever exceed the reserve for this policy, computed according to the Actuaries' or Combined Experience Table of Mortality on the basis of four percent interest, any excess shall be paid by me in cash, on demand."

The question in the case is whether the compounding of interest on the policy liens was in contravention of G. S. 1913, § 5805. This statute reads as follows:

"The interest for any legal indebtedness shall be at the rate of six dollars upon one hundred dollars for a year, unless a different

rate is contracted for in writing; and no person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum, or any greater value, for the loan or forbearance of money, goods, or things in action, than ten dollars on one hundred dollars for one year; and in the computation of interest upon any bond, note, or other instrument or agreement interest shall not be compounded, but any contract to pay interest, not usurious, upon interest overdue, shall not be construed to be usury."

It has been held that this statute forbids the compounding of interest in all transactions covered by the statute, Lee v. Melby, 93 Minn. 4, 100 N. W. 379, and the real question is whether, in these policy lien transactions, defendant was governed by the usury statute. We agree with the trial court that it was not. The statute applies to "interest for any legal indebtedness," interest "for the loan or forbearance of money" and to the "computation of interest upon any bond, note or other instrument or agreement." Under the doctrine of ejusdem generis "other instrument or agreement" must be held as referring to other instruments or agreements of the same general nature as bonds or notes. In other words, the statute was intended to protect borrowers of money from the exactions of money lenders and in terms reasonably clear it expresses that intent. The contract before us is in no proper sense a loan of money, though the legislature subsequently called it such. Laws 1901, p. 233, c. 178, § 29. There is no obligation to pay either the amount of the lien or interest, and defendant had no power to sue or to terminate the policy in the event of non-payment. In substance and in fact the provision is one for a deduction from the amount to be paid at the maturity of the policy, of the amount necessary to make up the proper and legal reserve, and, in determining what is such sufficient amount, defendant used the formula and method of computation universal in the life insurance business, that is, of compounding interest annually. Calculations might be made in such cases on the basis of simple interest, but the initial reserve would have to be larger or the rate of interest higher and the computation would not then be scientific or accurate. If the

company had received the reserve in cash, interest on it would have been compounded.  An insurance company, on accumulation of its reserve from premiums, invests the accumulations, and as interest is received on investment, that interest is free for investment, so that the principal of compound interest is a natural corollary of the nature of the business.  The amount of these policy liens must be computed on the same basis or the result will be inequality and confusion.  Of course the convenience of defendant or its policyholders is not a decisive factor in determining whether or not this contract contravenes the statute, but the facts above mentioned bear on the nature of the contract, and it seems clear to us that the contract is not within the prohibition of the statute.

Judgment affirmed.