VOLUNTEER STATE LIFE INSURANCE COMPANY *v.* SPRATLING;
*et vice versa.*

GEORGE, J. A limited payment (20-pay) life-insurance policy was issued
on May 25, 1913. The insured paid the first premium on the date of
issue, the second premium on May 25, 1914, and the third on May 25,
1915. The premium due on May 25, 1916, was not paid. The insured
died on August 25, 1916. The insured had borrowed on the policy
$337.11, and the interest on the amount had been paid up to May 25,
1916. The premium, as stated in the face of the policy, was $316.89,
payable annually. The policy provided: "The company will, at any
time after three full years' premiums have been paid, advance upon the
sole security of this policy, when legally assigned, a sum equal to the
amount specified in the table below, less any indebtedness to the com-
pany on account of this policy. The interest on such loan shall not
exceed six per cent. per annum, and shall be payable annually in ad-
vance." The loan or surrender value of the policy, as stated in the
table referred to, was $396 after the policy had been in force three years;
$621 after four years. The policy further provided: "In the event the
insured should, at any premium date or within the days of grace there-
after, after three full years' premiums have been paid hereon, fail to
pay or cause to be paid the then current premium, if the policy be not
surrendered by the insured with a choice of one of the options herein
guaranteed, and if at the time of the non-payment of premium there is a
loan value hereon in excess of all indebtedness that may then exist
against the policy, together with interest, the company will apply such
available loan value towards the payment of the premium then due, with
interest thereon at a rate not exceeding six per cent. (6%) per annum,
chargeable annually in advance; and will continue to carry said policy
in force, in the form as written and at the rate of premium as pro-
vided for in the face hereof, subject to its terms and such indebted-
ness, the same as if the premium had been paid in cash; and will con-
tinue to so apply such loan value as long as such value, at the rate
of premium provided in the face hereof, will suffice to pay for even one
day's premium. At any time while this policy is thus in force the in-
sured may resume payment of premiums thereon without medical re-
examination, and in that event any indebtedness against the policy may
either be paid in cash or allowed to remain as a loan hereon. All such
indebtedness shall be a first lien on the policy, and the policy will lapse
unless premium payments are resumed by the insured within the actual
period of extension." The non-forfeiture provisions of the policy, other
than the automatic premium-loan clause last above quoted, gave to the
insured the option to surrender the policy to the company, after the
policy had been in force three full years, and at any time prior to
default in premium payment, or within the days of grace (one month)
thereafter, and to take (1) the cash-surrender value, as indicated by
the table set out in the policy, less any indebtedness to the company
on account of the policy; or (2) a non-participating paid-up life policy
for a reduced amount, as indicated by the table; or (3) a non-partici-

pating paid-up term policy for the full amount insured by the policy, as indicated by the table, with a provision in (2) and (3) as to any indebtedness to the company on account of the policy. The insured did not surrender the policy, and did not elect to take any of the options last above referred to. On June 26, 1916, the fourth annual premium having become due on May 25, 1916, the company offered to loan to the insured the full amount available after the policy had been in force four years, to wit, $621, at the same time tendering the insured a loan agreement to be executed by himself and his wife, the latter being the beneficiary named in the policy. Along with the loan agreement the company furnished to the insured a statement of his indebtedness to it, showing: former loan, $337.11; premium due on May 25, 1916, $316.89, and interest to May 25, 1917, $37,26. making a total of $691.26; and required the insured to pay the additional sum of $70.26 to. cover the total of his indebtedness to the company. On June 27, 1916, the insured signed the agreement and forwarded it from Macon, Ga., to the beneficiary at Atlanta, Ga., with the request that she also execute the agreement and deliver it to the company together with the sum of $70.26. At the time of the receipt of the agreement by the beneficiary she was "ill and bedridden and remained in this condition for several days, at which time she became wholly unconscious and remained in this condition until after the death of the insured; and for said reasons was unable to execute said loan agreement prior to the death of the insured." The insured died without knowing that the beneficiary had not complied with the "wrongful" demands of the company. After the death of the insured the beneficiary completed the agreement and tendered it together with $70.26 to the company. One clause of the policy provided: "This policy is issued with the express understanding that the insured may, without the consent of the beneficiary, receive every benefit, exercise every right, and enjoy every privilege conferred upon him by this policy" *Held:*

1. Under the foregoing facts, the available loan value on the policy, to wit, $58.89 (conceding, without deciding, that interest at six per cent. per annum in advance on the existing loan and on the amount appropriated to the payment of the premium due should not be first deducted), was, under the automatic premium-loan clause quoted above, insufficient to "carry the policy in force, in the form as written," to the date of the insured's death, August 25, 1916.

(a) The obligation of the company, under the automatic premium-loan clause quoted above, was to apply such available loan value toward the payment of the premium due, and to carry the policy in force "in the form as written and at the rate of premium as provided for in the face" of the policy. In a strict technical sense no "rate of premium" is provided in the face of the policy. The reference is, however, to the contract as written, and the words quoted above are to be given their usual and ordinary signification. The parties were dealing with this contract of insurance, to wit, a limited-payment life policy as distinguished from a purely protective policy or other form of contract.

2. The insurance company was not estopped from declaring a forfeiture of

the policy (conceding, without deciding, that its demand that the loan agreement be executed by the beneficiary was wrongful and unauthorized), it affirmatively appearing that the sum of money necessary to pay the past-due premium, interest in advance upon the loan, and the existing loan upon the policy was neither paid nor tendered the company until after the death of the insured.          *All the Justices concur.*

No. 905.  NOVEMBER 16, 1918.  REHEARING DENIED FEBRUARY 24, 1919.

Questions certified by Court of Appeals (Cases Nos. 9445, 9472).

*Little, Powell, Smith & Goldstein* and *W. B. Miller,* for plaintiff in error.

*Jones & Chambers* and *Samuel Barnett,* contra.