(93 South. 566)

**PENN MUT. LIFE INS. CO. v. BANCROFT.**
(6 Div. 641.)

(Supreme Court of Alabama. April 20, 1922. Rehearing Denied June 1, 1922.)

1. **Insurance** ⊖179½—**Where policy pledged with insurer, agreement that if indebtedness exceeds policy's cash value policy shall terminate held valid.**

Where insured pledged his policy with insurer as security for a loan, an agreement that, if the indebtedness including interest should equal or exceed the policy's cash value, the policy should terminate, *held* valid, in the absence of a showing that the policy was of greater value than the stipulated cash value.

2. **Pledges** ⊖56(2) — **Pledgor may authorize pledgee to sell at public or private sale.**

Pledgor may authorize pledgee to sell the property at either a public or a private sale.

3. **Pledges** ⊖56(6) — **Pledgor may authorize pledgee to purchase property.**

Pledgor may authorize pledgee to purchase the property pledged and apply the proceeds to the liquidation of the debt, holding the balance in trust for pledgor.

4. **Pledges** ⊖56(5)—**Sale must be fairly made and for fair price.**

The sale of property pledged must be fairly made and for a fair price.

5. **Insurance** ⊖179½—**Giving insured opportunity to pay loan held not to waive right to cancel policy.**

Where insured pledged his policy with insurer, insurer did not waive its right to cancel the policy when the indebtedness including interest exceeded the policy's loan value by giving insured the opportunity to pay the indebtedness instead of immediately canceling the policy.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by Isla E. Bancroft against the Penn Mutual Life Insurance Company. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under section 6, p. 449, Acts 1911. Reversed, and judgment rendered for defendant.

Suit by appellee against appellant on a life insurance policy, and tried before the court without a jury. The trial was upon agreed statement of facts, which counsel for appellant have summarized in their brief as follows:

A life insurance policy was issued by the appellant to Josiah D. Bancroft on November 5, 1895, for $1,000. The policy is set out in the record on pages 7 to 15, inclusive. Annie A. Bancroft, mother of the insured, was made beneficiary, and in case of her death prior to the death of the insured the policy was payable to the administrator or executors of the insured. The beneficiary died prior to the death of the insured, and the suit was brought by plaintiff as executor of the insured's estate. The premiums were paid on the policy for 20 years, and it became a paid-up policy on November 5, 1915.

On April 21, 1913, 2½ years before the policy was paid up, the insured borrowed, in accordance with the terms of the policy, $350 from the appellant, and paid the interest in advance to November 5, 1913. At the time this loan was made the insured and the beneficiary signed a loan agreement called "certificate of indebtedness," which is set out on pages 15 to 17, inclusive, of the record, and "assigned, transferred and delivered" the policy to the appellant. Subsequent to that time the insured failed to pay any interest whatsoever on the loan, and failed to pay any part of the principal, and no part of either has ever been paid or tendered, except as hereinafter stated. The policy has at all times since the date of the loan remained in the possession of the appellant.

Under the terms of the loan agreement, interest on the loan was due on the 5th of November of each year in advance, and about 10 days before the interest became due a notice was sent by appellant to the insured notifying him that the interest would be due on that date. A copy of this notice is set out in the record, marked "Exhibit C," on page 17 of the record. Within a reasonable time after the due date of the interest a second notice was sent to the insured notifying him that the interest was overdue and that it should be paid without delay. Within a reasonable time subsequent to the second notice a third notice was sent to the insured. * * * These notices were sent each year to the insured and were ignored by him, and no interest was ever paid by him. The appellant, however, upon the failure of the insured to pay the interest, acting in accordance with the provisions of the loan agreement, added the amount of interest due and unpaid to the principal of the loan. This resulted in increasing the amount of the loan on the 5th day of November, 1917, to the sum of $29.49. At

that time interest in advance for another year, amounting to $21.47, became due and was not paid by the insured. The insured then owed the appellant the sum of $450.96.

On that date, November 5, 1917, the cash value of the policy was only $438.20, and was not sufficient to pay the amount due to appellant on the loan. The appellant did not, however, at once cancel the policy, as it had a right to do under the loan agreement; but it did later exercise this right and so notified the insured, as appears from the notice marked "Exhibit F," and set out on pages 18 and 19 of the record, and marked the policy canceled. The appellant, however, did not seek in any way to forfeit anything belonging to the insured. It did far more for the benefit of the insured than it was required to do. Although the insured was in arrears with the appellant, the appellant, in order to give him further protection, purchased for him, as was its custom where premiums were unpaid and policies canceled therefor, what is known as extended insurance, and so notified the insured. Nothing was ever said or done by the insured between this time and the date of his death, October 16, 1919. Long prior to his death, not only the policy sued upon in this case but the extended insurance had expired.

The certificate of indebtedness signed by the parties contained the stipulation that as security for the entire amount of indebtedness the insurance policy "is assigned, transferred and delivered" to the company together with all the rights arising therefrom.

The trial court found for the plaintiff in the sum of $578.42, and rendered judgment accordingly, from which defendant prosecutes this appeal.

Percy, Benners & Burr, of Birmingham, for appellant.

An agreement between policy holder and insurance company, by which title to contract of insurance is transferred to insurance company as collateral security for a loan, with provision that if at any time the amount of indebtedness should equal or exceed the value of the contract of insurance, liability of insurance company on the policy should terminate, is valid. 16 Ala. App. 549, 80 South. 25; 114 Minn. 1, 130 N. W. 250, Ann. Cas. 1912B, 957; 227 N. Y. 524, 125 N. E. 682, 18 A. L. R. 1141; (Tex. Civ. App.) 187 S. W. 351; 11 Cal. App. 387, 105 Pac. 265; 53 Wash. 523, 102 Pac. 419; 246 U. S. 357, 38 Sup. Ct. 337, 62 L. Ed. 772, Ann. Cas. 1918E, 593; 194 Mo. App. 214, 186 S. W. 1188; (Mo.) 211 S. W. 548; 236 Pa. 460, 84 Atl. 826; 196 Mo. App. 318, 193 S. W. 860; 201 N. Y. 492, 94 South. 1075, 35 L. R. A. (N. S.) 1123; 48 Ind. App. 284, 91 N. E. 814; 161 N. Y. 325, 55 N. E. 1059; 111 Miss. 133, 71 South. 302.

H. M. Powell, of Birmingham, for appellee.

A stipulation in a pledge agreement that, upon debtor's default, the title shall become absolute in the pledgee, is void. 115 Ky. 100, 72 S. W. 736, 61 L. R. A. 268, 103 Am. St. Rep. 297; 16 Ala. 213, 50 Am. Dec. 175; 16 Ala. App. 549, 80 South. 27; 182 Mo. 319, 81 South. 171.

GARDENER, J. [1] This is a suit upon a life insurance policy upon which the insured had obtained a loan of $350, and pledged the policy as security therefor. The pledge of the policy was in the form of a loan agreement, called the "certificate of indebtedness," signed by the insured and also the beneficiary. This agreement effected an assignment and transfer of the insurance policy to the company, to which the policy was delivered. This loan was made something like 2½ years before the policy was paid up, but the subsequent premiums were promptly paid and the policy became paid up in November, 1915. No part of the principal or interest of this loan has been paid, and defendant company resists this suit upon the theory that on account of the default in the payment of this indebtedness—due notice having been given to the insured—the policy had been canceled, pursuant to the stipulation set forth in the certificate of indebtedness, which is as follows:

"Interest not paid when due shall be added to the indebtedness evidenced by this certificate and shall bear interest at the rate aforesaid. If at any time the entire indebtedness evidenced by this certificate together with any other indebtedness to the company on said policy shall equal or exceed its loan value the company's liability under said policy shall terminate upon compliance by the company with the requirements of the policy, if any, respecting notice."

As we understand the agreed statement of facts, at the time of the cancellation of the policy the amount of the indebtedness on account of said loan on said policy in fact exceeded the loan value of the policy, and the question of prime importance upon this appeal relates to the validity of the foregoing agreement.

Counsel for appellee insist that, as this was but a pledge of the policy as security for a debt, a stipulation in a pledge agreement of this character upon the debtor's default that the title shall become absolute in the pledgee is void, citing Williamson v. Culpepper, 16 Ala. 213, 50 Am. Dec. 175; N. Y. Life Ins. Co. v. Curry, 115 Ky. 100, 72 S. W. 736, 61 L. R. A. 268, 103 Am. St. Rep. 297; T. Ins. Co. v. Lazenby, 202 Ala. 207, 80 South. 29; Hagan v. Cont. Nat. Bk., 182 Mo. 319, 81 S. W. 171. These cases, however, upon examination will be found readily distinguishable from that here presented.

[2-4] It is, we think, well settled that agreements relating to pledges may authorize the pledgee to sell the property at either public or private sale, and the pledgee may himself become the purchaser, applying the proceeds to the liquidation of the debt, and

holding the balance in trust for the pledgor. The sale must be fairly made, and for a fair price; but, as demonstrated by several of the authorities hereinafter cited, no general market for life insurance policies can be said to exist, at least in this state where the beneficiaries of such policies are limited under the rules of our decisions, and therefore, if such a policy were offered for sale, a vast majority of the public would be prohibited from purchasing, and the result would be that the company would doubtless be the only bidder, and become the purchaser under terms less advantageous to the insured and beneficiary. As said by some of the authorities, such an insurance policy, whether fully paid or not, has no marketable sale value, and an attempt to thus dispose of it at public sale would be futile. Some method, therefore, of enforcement of such contracts, other than sale, has been resorted to, and it has been held by the great weight of authority that agreements of this character, for the cancellation of a policy at the cash surrender value, are not inconsistent with sound public policy or violative of any of the substantial rights of the pledgor. In Palmer v. Mut. Life Ins. Co., 114 Minn. 1, 130 N. W. 250, Ann. Cas. 1912B, 957, the Supreme Court of Minnesota, speaking of such provisions, said:

"On the contrary, it is a reasonable and practicable method of bringing the contract to a final termination."

The opinion in that case points out that an agreement which vests in the pledgee the right to arbitrarily determine the value of the policy at a sum substantially less than its actual cash surrender value would be construed as imposing a penalty for the nonpayment of the debt, and would therefore be void. Under such an agreement oppression would be shown, and the insured or beneficiary protected by the courts, in construing such a stipulation as a penalty and therefore unenforceable.

In the present case, however, no such question arises. There is nothing in this record to indicate any oppression or unfairness or that the policy was of any greater value than that stipulated as its cash value, which appears in the statement of the case. Numerous notices were shown to have been given insured in regard to default in the payment of the interest, to which no attention was paid. The cancellation of the policy by the defendant company was but a method for the enforcement of the foreclosure of the pledge—a practical method of bringing the transaction to a final termination. Such agreements have been sanctioned by numerous authorities. Stevens v. Mut. Life Ins. Co., 227 N. Y. 524, 125 N. E. 682, 18 A. L. R. 1141; Hartford Life Ins. Co. v. Benson (Tex. Civ. App.) 187 S. W. 351; Sherman v. Mut. Life Ins. Co., 53 Wash. 523, 102 Pac. 419; Ruane v. Manhattan Life Ins. Co., 194

Mo. App. 214, 186 S. W. 1188; Frese v. Mut. Life Ins. Co., 11 Cal. App. 387, 105 Pac. 265; Palmer v. Mut. Life Ins. Co., supra.

Indeed, a careful reading of the case of Travelers' Ins. Co. v. Lazenby, by the Court of Appeals, reviewed by this court on certiorari in Travelers' Ins. Co. v. Lazenby, 202 Ala. 207, 80 South. 29, discloses that the foregoing authorities were recognized as sound, and were distinguished from that case. In the Lazenby Case it was distinctly pointed out the company did not acquire the legal title to the policy by the contract, nor was there ever executed what is termed a surrender deed, as was stipulated in the contract, as a method of foreclosure, and, there having been no foreclosure by due process of law, it was held that the company was without right to have canceled the policy. Speaking to this question, the Court of Appeals in that case said:

"The contract in the instant case does not purport to transfer the title or interest in the policy, but it is distinctly placed as a pledge. Of course, therefore, in the Palmer Case, supra, when default occurred and the company exercised its option, the title already being in the company, and the company applied enough of the value of the policy to the payment and extinguishment of the debt, paying or offering to pay the balance, if any, to the insured, it became a foreclosure according to the terms of the contract."

This quotation suffices to demonstrate that the holding in the Lazenby Case was in line with the great weight of authority, and in entire accord with the conclusion we have reached.

[5] There is no merit in the insistence that the insurance company, by not canceling the policy immediately upon the amount of the loan exceeding the value of the policy, waived its right of cancellation. The company merely extended to the insured the opportunity to pay up the interest and continue the policy in effect, and at all times insisted that the interest was due and should be paid in order to prevent loss of the policy. Nothing was done by the company to mislead the insured, or in any manner indicating a waiver of such right of cancellation. Some of the cases cited above—Sherman v. Mut. Life Ins. Co.; Stevens v. Mut. Life Ins. Co.; and Frese v. Mut. Life Ins. Co.—consider this question and so hold. Indeed, notice was sent to the insured that his policy had been canceled, and that extended insurance had been purchased for him, and when the same would expire, and the insured offered no objection nor did he pay any interest. While the agreement referred to as the certificate of indebtedness fixes no exact date as to the maturity of the debt, yet it was in the power of insured to prevent a cancellation of the policy by making payments upon the amount of the loan, and meeting the interest installments so as to prevent the

amount of indebtedness equaling or exceeding the cash surrender value of the policy. In failing so to do, he has defaulted and given vitality to the remedy of foreclosure, to which he agreed.

We therefore conclude the stipulation was valid, reasonable, and fair, and that under the agreed statement of facts the policy had been duly canceled and was of no force, and that the plaintiff was not entitled to recover. It therefore results that the judgment of the court below will be reversed, and one here rendered for the defendant.

Reversed and rendered.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.