23199. MISSOURI STATE LIFE INSURANCE COMPANY
*v.* BOZEMAN.

DECIDED FEBRUARY 27, 1934.

*John S. Adams, Hull, Barrett & Willingham,* for plaintiff in error.

*C. C. Crockett,* contra.

MacINTYRE, J. Mrs. Martha J. Bozeman brought an action against the Missouri State Life Insurance Company on an insurance policy on the life of her husband, James C. Bozeman, seeking to recover $349, the difference between the face of the policy, $1000, and a loan of $651 thereon, and a dividend of $9.58. The judge of the superior court, passing upon the case without the intervention of a jury, rendered a judgment against the company for the prin-

cipal sum of $354.21, with $17.50 interest to March 24, 1933, the date of the judgment. The insurer excepts to this judgment.

Briefly stated, the insurer pleaded certain provisions of the policy declared upon and the loan agreement, averring that the policy became void prior to the death of the insured, by reason of the fact that after it had notified the insured, in accordance with a policy provision and the loan agreement, that the loan of $651 equalled the guaranteed cash-surrender value of the policy on January 28, 1932, the insured "continued his default in the payment of the interest due . . . , which at that time amounted to $39.06, for a period of thirty-one days." For convenience, the pertinent provisions of the policy hereinafter set out are numbered; and the provision relied upon by plaintiff in error is numbered 1.

Provision number 1 of the policy is as follows: "*Cash Loans.* On or after the beginning of any policy year from date hereof, and on demand in writing to the home office of the company, the insured may borrow on the sole security of this policy an amount not to exceed that specified in column one (1) of the accompanying table for the year in which the loan is made. This policy shall be assigned to the company as security, according to the terms of the company's loan agreement, and the premium on this policy and interest on the loan at a rate of interest not exceeding six per cent. per annum shall be paid or deducted from the loan in full to the anniversary of the insurance next succeeding the date when the loan shall be made. Interest, if not paid when due, shall be added to the principal and bear the same rate of interest. The amount available at any time includes any previous loans then unpaid."

"Unless the total indebtedness hereon shall equal or exceed the cash value of this policy, and then not until one month after notice shall have been mailed by the company to the last known address of the insured and assignee, if any, failure to pay any loan or interest thereon shall not void this policy, but, in the event of such default, when the premium becomes due and is not paid, an amount of insurance equal to the face amount of this policy, less the indebtedness, shall automatically continue from the date of default as term insurance for the term, including the period of grace, which the excess of the cash value over the indebtedness will purchase at the then age of the insured according to the American Experience Table of Mortality, and interest at the rate of three and one-half

per centum (3½ per cent.) per annum; or, in lieu of such term insurance, the company will (upon written request of the insured and surrender of this policy within one month from date of default) either pay said excess in cash, or issue a paid-up policy for the amount which said excess will purchase at the then age of the insured according to the said table of mortality and rate of interest. The term insurance specified in this policy shall not be subject to cash loans."

2. "*Reserve basis.* This policy is issued on the basis of the American Experience Table of Mortality and interest at three and one-half per cent. (3½ per cent.) per annum. The values used for cash surrenders, loans, extended term and paid-up insurance, shown on accompanying table, are reserves indicated by said table of mortality and interest less a surrender charge which in no case exceeds two and one-half per cent. (2½ per cent.) of the amount insured under this policy."

3. "*Values after 20 years.* Loan and cash values in each year after the twentieth policy year will be the full reserve of this policy on the basis stated herein, the figures for which will be furnished on request to the home office of the company."

The loan agreement, duly executed on October 8, 1931, provides that the insurance policy declared upon "is hereby assigned to said company as sole security for this loan. This indebtedness is created subject to all the conditions set forth in said policy relating to policy loans." Other pertinent provisions of the loan agreement are: "Interest will hereafter be payable annually in advance on the anniversary date of said policy, and any interest not paid when due will be added to the principal, and bear interest." "Failure to repay any loan hereon, or to pay interest, will avoid this policy if the total indebtedness hereon to the company equals or exceeds the then cash value, but not otherwise. In such event this policy will become void thirty-one days after the company shall have mailed notice to that effect to the last known address of the insured and of the assignee of record, if any. Any indebtedness hereon will be deducted in any settlement of this policy."

It appears from the record that the original policy was a non-participating policy until about the year 1923, when the board of directors of the insurer "granted to certain forms of policies the privilege of receiving excess interest dividends," said privilege being

expressed in the following provision: "Excess interest dividend on paid-up policy. After this policy becomes fully paid up for its face amount or an amount in excess thereof, the company will, upon surrender of this policy, issue a paid-up policy for the life of the insured, therein agreeing that each year thereafter during the continuance of the policy in force, the company shall ascertain and pay in cash to the insured the full interest earnings for the year upon the initial reserve on such policy, less three and one-half per cent. required to maintain the reserve, together with one-half of one per cent. chargeable for investment expenses."

The contract of insurance was a twenty-payment policy, and the last of the twenty premiums due thereon was paid on January 28, 1929, the anniversary date of the policy, the policy then becoming a paid-up, participating policy. On October 8, 1931, the insured obtained a loan of $651, the full loan value of the policy at that time, and assigned the policy to the insurer as sole security for the loan. When the loan became due on January 28, 1932, the company added a year's interest ($39.06) in advance to the loan of $651, and notified the insured that inasmuch as the said loan equalled the then available cash value of the policy, the policy would be void unless the interest were paid within thirty-one days from January 28, 1932. Neither the principal, nor the interest, nor any part of either having been paid within the time stated, the insurer declared the policy void, and so notified the insured. On January 28, 1932, a dividend of $9.58 accrued on the policy. The insured made no suggestion to the insurer as to what disposition should be made of the dividend, and the insurer retained it until a few days after the death of the insured on March 10, 1932, and then tendered the beneficiary a check for the same, which the beneficiary refused to accept.

"A stipulation in a paid-up policy of life insurance and a loan agreement thereon, providing for what amounts to a method of foreclosure, after the giving of the prescribed notice, by the cancellation of the policy and the application of the cash value thereof to the payment of the loan whenever the past-due principal with the interest thereon equals or exceeds the actual cash value of the policy (as distinguished from some amount arbitrarily fixed by the insurer without regard to the actual value), is valid, and does not contravene public policy or amount to confiscation or to an agree-

ment for the exaction of a penalty for non-payment of the indebtedness, since, under such a contractual procedure, the insured realizes the full amount of all his rights and interest in the policy at the time of such cancellation." *Hammond* v. *Volunteer State Life Insurance Co., 47 Ga. App.* 472, 480 (170 S. E. 681), and cases cited therein, especially Penn Mutual Life Ins. Co. v. Bancroft, 207 Ala. 617 (93 So. 566, 28 A. L. R. 1103). See also 6 Couch's Cyclopedia of Insurance Law, 5046, § 1516, and Jones v. Mutual Life Ins. Co., 216 Ala. 437 (113 So. 314; 54 A. L. R. 1068). "Except where otherwise provided by statute, within certain limitations, it is very generally held that the payment of interest in advance may be provided for by contract between private parties." 33 C. J. 189, § 29. The foregoing pronouncement is supported by the citation of numerous authorities. The provision for the payment of interest in advance at the rate of six per cent. per annum violates no principle of law in Georgia, and is valid.

It is contended by counsel for the defendant in error that the provision of the policy for forfeiture in the instant case relates to a situation where premiums are past due, and not to one where the policy is fully paid up—to an executory, and not to an executed, contract. We can not accede to this contention. To our minds, the clause, "Unless the total indebtedness hereon shall equal or exceed the cash value of this policy, and then not until one month after notice shall have been mailed by the company to the last known address of the insured, . . failure to pay any loan or interest thereon shall not void this policy," is designed to cover a situation where "the total indebtedness . . shall equal or exceed the cash value of the policy," and the ensuing part of the provision to instances where the policy has some cash value to be applied in one of the ways stated in the provision. We see no good reason why the clause first above quoted is not applicable to the situation in the present case. But, in any event, the loan agreement made after the policy had been fully paid up is clear and unequivocal, and there appears no good reason why it is not valid and .binding upon the parties thereto. This conclusion is supported in principle by the following ruling of the Supreme Court in *State Life Insurance Co.* v. *Tyler,* 147 *Ga.* 287 (93 S. E. 415) : "A contract of life insurance, as expressed in the policy issued by a company to an individual, may be supplemented by a subsequent contract between the

parties, expressed in a promissory note given by the insured to the insurer for a premium on the policy and providing for a termination of all rights under the policy for nonpayment of the note, although the policy contain no such provision."

It is further contended that the "indebtedness" did not equal the cash value of the policy on January 28, 1932, this contention being based upon the hypothesis that the indebtedness was $651 plus the interest actually accruing from said date to the death of the insured on March 10, 1932, and that the dividend accruing on January 28, 1932, was more than sufficient to discharge said interest. If this contention be correct, the dividend, if applied to the "indebtedness," would be sufficient to pay off the interest and reduce the principal below the cash value of the policy. However, we do not agree to this interpretation of the word "indebtedness." Both the policy of insurance and the loan agreement stipulate that the interest shall be payable in advance, and that, if not so paid, it shall be added to the principal. This agreement being proper and legal, we think that the "indebtedness" on January 28, 1932, was $651, the amount of the loan, plus advance interest of $39.06 for the year 1932. If this conclusion is correct, it is immaterial whether or not the dividend of $9.58 be deducted from the indebtedness, since it would not suffice to pay one-third of the interest. Furthermore, the contract of insurance stipulates that the dividend shall be payable "in cash," and, there being nothing in the record to show that the insured ever instructed the insurer to apply the dividend to his debt, we do not think that the insurer had any right to do so. We see nothing in the following authorities cited by defendant in error to sustain his contention that the dividend in the instant case should have been applied to the interest due on the debt of the insured: *Perkins* v. *Empire Life-Insurance Co.*, 17 *Ga. App.* 658 (87 S. E. 1094) ; *Spratling* v. *International Life Ins. Co.*, 23 *Ga. App.* 609 (99 S. E. 162) ; *Volunteer State Life Ins. Co.* v. *Spratling*, 148 *Ga.* 687 (98 S. E. 464). These cases relate to a situation where the policy of insurance provides that its accrued loan value shall be applied by the insured to the payment of a due premium to carry the insurance as long as it will under the provisions of the policy, and not to a case like the one sub judice. It will be noted that in the instant case the policy of insurance had no loan value on January 28, 1932, the time the debt was due.

It appears from the record that on January 28, 1931, the insured, "in making settlement of this loan interest, used the dividend of $9.39 available as part payment of the interest of $19.66, and the balance of the interest due was charged against the policy as additional indebtedness." It is hardly deducible from the language of the witness quoted that the insurer, without the consent or approval of the insured, applied his dividend to the payment of interest. But, in any event, this single instance of the application of the dividend to the loan interest would not suffice to create a custom of so applying the dividends, especially in the light of the provision of the insurance contract that the dividends were payable "in cash" to the insured. As already stated, it is admitted that the 1932 dividend on the policy of insurance was retained by the insurer until shortly after the death of the insured, and then sent to the beneficiary. It is contended by the defendant in error that the foregoing facts estop the insurer "to insist on a lapse of the policy at the end of the grace period, when they held this check for no other purpose than to allow it to be applied on the interest." It may not be amiss to state here that, if a former conclusion reached by us is correct, the dividend in question was insufficient to pay the accrued interest on the loan. We do not think that the facts under immediate consideration, or those facts together with any other facts appearing in the record, show that the insurer waived its right to collect its loan, or that it was estopped from so doing. We are aware of the rule that forfeitures stipulated in contracts are not favored, and that courts are prone to seize upon any circumstance indicating an intention to waive the forfeiture. However, we do not apprehend that in a case like this, where the insurer is undertaking to enforce a valid, agreed method of collecting its debt, and where the facts are as above stated, any waiver arises.

It follows from what has been said that in our opinion the policy of insurance declared upon was void prior to the death of the insured, and valueless upon his death. The foregoing statement, of course, has no reference to the dividend which the plaintiff in the trial court claims, and which the insurer admits it owes. We hold that the judgment of the trial court was erroneous, and reverse the same.

*Judgment reversed. Broyles, C. J., concurs. Guerry, J., dissents.*

GUERRY, J. I am unable to concur in the majority opinion in this case. The whole question presented for determination in this case is whether on the date of January 28, 1932, the *actual cash value* of the policy equalled the amount of the loan then due. As was held by this court in the case of *Hammond* v. *Volunteer State Life Insurance Co.,* 47 *Ga. App.* 472 : "The stipulation in the paid up policy of life insurance and the loan agreement, providing for what amounted to a method of foreclosure after the prescribed notice, by cancellation of the policy and the application of its value to payment of the loan when the past due principal with interest thereon equaled or exceeded the cash value of the policy, was valid, and did not contravene public policy or amount to confiscation or to an agreement for exaction of a penalty for nonpayment of the indebtedness, since, under the contractual procedure, *the insured realized the full amount of his rights and interest in the policy at the time of the cancellation.*" (Italics ours.) On January 28, 1932, no interest was due on the loan of $651, the interest having been deducted in advance to that date at the time of the making of the loan. The note provided that, "failure to repay any loan hereon, or to pay interest will avoid this policy *if the total indebtedness hereon to the company equals or exceeds the then cash value, but not otherwise.* [Italics mine.] In such event this policy will become void thirty-one days after the company shall have mailed notice to that effect to the last known address of the insured and the assignee of record, if any." On January 28, 1932, it appears that there was due the insured a cash dividend of $9.58. It does not appear that this sum was sent to the insured or that he was given any notice of the amount due him in dividends, at the time, or in the correspondence notifying him in reference to the forfeiture of the policy. The insured died March 10, 1932, and after the company received notice of his death a check for $9.58 was mailed to his beneficiary. From an inspection of the policy it appears that a definite fixed amount was specified and named each year up to the 20th year; the policy at such time becoming a paid-up policy, as being the cash-surrender value, or the cash-loan value upon which loan interest was to be deducted in advance. After the policy became paid up its loan- or cash-surrender value was determined by the same arbitrary standards. On January 28, 1932, the cash loan value on said policy amounted under such policy to $651. In addition thereto

there was due the insured the sum of $9.58 as dividends, and therefore the actual cash value of said policy was $651 plus $9.58 dividend. The amount of the loan thereon *was not equal* to the *actual then cash value* as prescribed in the loan note and agreement. It will be noted in the *Hammond* case, supra, that Judge Jenkins calls attention to the fact that there were no cash dividends due on the policy in that case. Further attention is called to the fact that repeated notices were given the insured and this language is used: "Especially would the rule here stated have application where the insured, after oft-repeated notice, makes no effort to pay the indebtedness, or, after cancellation, fails to accept the insurer's offer to reinstate the policy." An examination of the record in the *Hammond* case, will disclose that the insurance company offered to accept small notes payable monthly for the past-due interest and enclosed a note embodying such terms, to which offer the insured made no reply. The insured in this case lived in Danville, Georgia, R. F. D. No. 3, and died within ten days after the alleged avoidance of his policy, with an amount still due him from the company of a sum more than twice sufficient to have paid the interest on his loan up to that date. I have no dissent as to the law cited in the majority opinion. In 14 R. C. L. 952, it is stated that a provision for the forfeiture of a policy because of failure to pay principal or interest on loan, where the loan exceeds or is equal to the cash-surrender value is valid. "The surrender value, however, is the actual value, and not such value as the insurer may arbitrarily fix." Under the evidence in this case, on January 28, 1932, the actual value of this policy was $960.58 and the loan was only $951 and inasmuch as this dividend was not sent to or accepted by the insured but was retained by the company until after his death and the amount due on the loan on March 10, the date of the death, did not equal the actual value of the policy, no forfeiture was worked and the insurance was in effect and the beneficiary was entitled to recover. I am therefore of the opinion that the judgment of the lower court is correct and should be affirmed.