## Duffield v. Equitable Life Assurance Society of the United States

*Charles J. Solomon* and *Samuel M. Brodsky*, for plaintiff.

*Robert J. Sterrett*, for defendant.

SLOANE, J., October 9, 1942.—Edward P. Sautter had a $7,000 life insurance policy with defendant company. By its terms it was fully paid on October 17, 1936. He died on January 30, 1942. His beneficiary brought this suit for the face amount of the policy.

The company filed an affidavit of defense with new matter alleging cancellation of the policy. It averred in brief substance: Sautter had borrowed $4,090.23 on January 17, 1940; on December 9, 1941, the outstanding indebtedness with accrued interest was more than the cash value of the policy; on December 2, 1941, the company mailed to the insured a notice that on January 2, 1942, the amount of the outstanding indebtedness with accrued interest would equal or exceed the cash value of the policy, and unless the same was paid in the meantime the cash value of the policy would on that date be applied in payment of the loan and the interest thereon, and the policy canceled; the insured had failed to pay; the policy was canceled and nothing was owing.

Plaintiff then filed a rule for judgment for want of a sufficient affidavit of defense for the difference between the face amount of the policy and the smaller amount of loans and interest. That is the rule before us, and to us the right thing to do is to make the rule absolute.

There is a lesser question of practice: Whether or not the issue of judgment is properly raised by means of plaintiff's rule for judgment for want of a sufficient affidavit of defense. Plaintiff did not file a reply to defendant's new matter (its entire defense), and defendant argues that the legal sufficiency of the new matter can be raised only by such a reply raising questions of law, citing National Cash Register Co. v. Ansell et al., 125 Pa. Superior Ct. 309 (1937). But as I read that case I gather that the court disposed of the case and refused to enter judgment on the pleadings because of the proposition that (pp. 314, 315) :

"A summary judgment will be entered then only if it is clear that the appellant is entitled to the judgment asked for."

Speaking precisely, it is the proper practice to file both rules simultaneously—a rule for judgment and a reply to new matter raising questions of law: National Realty Appraisal Co. v. Art Club of Philadelphia, 129 Pa. Superior Ct. 99, 103 (1937) ; though one textman (Amram, Pennsylvania Common Pleas Practice (4th ed., 1936) 105) calls attention to a division of conclusion "on whether plaintiff may raise the deficiency of the new matter on a single rule for judgment for want of a sufficient affidavit of defense, or whether he must simultaneously file a reply in lieu of demurrer to the new matter". See also, ibid. p. 97, and cases cited in footnotes 89 and 90.

But plaintiff here did raise the primary question in her rule for judgment, and defendant is not harmed or prejudiced or surprised; the case presents no issue of fact for a jury's consideration; why not then dispose

of the matter in the interest of dispatch and the better administration of justice. I think as to this case, "Any other conclusion would be a reversion to the practice,— common in ancient days, but happily not now,—of making the rights of litigants depend on the skill of the pleader, rather than on the justice of their claims": Rhodes v. Terheyden et al., 272 Pa. 397, 402 (1922).

Coming to the rule for judgment:

What the company did was this: On October 18, 1940 (the end of the then current policy year), the company added interest ($184.23) on the loan of $4,090.23, from January 17, 1940, to October 17, 1940, making a total indebtedness of $4,274.46. On October 17, 1941 (the end of the next current policy year), it added interest of $256.47 for the full year on the $4,274.46, making the total indebtedness $4,530.93. Then on December 9, 1941, it calculated interest on the $4,530.93 for the period from October 17, 1941, to that date (making the total indebtedness $4,569.43) and calculated the policy value to be $4,569.11. The company says that the indebtedness was 32 cents in excess of the cash value, and the policy was properly canceled upon failure of the insured to pay after notice given him.

The company must look to the policy of insurance for its rights and its obligations, and I see nothing in the policy that permits it to do what it did. The pertinent paragraph in the policy reads:

"LOANS. At any time, while this policy is in force, after three full years' premiums have been paid, the Society will advance on proper assignment and delivery of this policy, and on the sole security hereof a sum which, with interest, shall not exceed the cash value at the end of the then current policy year . . . less any indebtedness to the Society hereon, provided all premiums or instalments of the same have been fully paid. Interest shall be at the rate of 6% per annum, and shall be payable on the premium anniversary date of this

policy. The loan may be increased by the cash value of dividend additions credited to this policy, if any. . . . Failure to repay such loan or to pay interest thereon shall not void this policy unless the total indebtedness hereon shall equal the total loan value, nor until thirty-one days after notice shall have been mailed to the Insured . . ."

No separate loan agreement appears here,[1] and the rights of the parties are concluded by the terms of the loan provision in the policy. I start off by saying that the policy is to be construed by settled principles: (1) "it is recognized as the settled doctrine that a policy of insurance must be liberally construed in favor of the insured, so as not to defeat, without necessity, his claim to the indemnity, which, in making the insurance, it was his object to secure; and, when the words are without evidence susceptible of two interpretations, that which will sustain his claim and cover the loss must in preference be adopted": 2 Cooley's Briefs on Insurance (2d ed., 1927) 994-995; (2) "That an existing doubt as to the construction of the different parts of a policy of insurance must be resolved in favor of the insured is familiar law . . .": Carter v. Metropolitan Life Ins. Co., 264 Pa. 505, 508 (1919); (3) especially does the insured get the benefit of the doubt where a contrary construction would result in a forfeiture: Murray v. Prudential Insurance Company of America, 144 Pa. Superior Ct. 178, 183 (1941).

"Forfeitures are odious in law, and are enforced only where there is the clearest evidence that that was what was meant by the stipulations of the parties": Helme v. The Philadelphia Life Ins. Co., 61 Pa. 107, 111 (1869).

Examining the loan provisions, interest "shall be payable on the premium anniversary date of this pol-

---

[1] The policy was simply stamped: "The Society has made an advance upon the security of the value of this policy and said advance with the interest thereon constitutes an indebtedness against it . . ."

icy". Dividend additions increase the cash and loan value of the policy, and dividends also are calculated on an anniversary date basis under the terms of the policy. That being so, the company had no right to choose December 9, 1941 (an intermediate date), as the date for determining the cash and loan value and for calculating interest. That is what an insurance company tried to do in Roeser v. National Life Ins. Co., 115 Pa. Superior Ct. 409 (1934), and the Superior Court refused to allow it.

On the premium anniversary date of October 17, 1941, the loan or cash value of the policy was $4,557, as compared with the indebtedness on the same date of $4,530.93, leaving a net value of $26.07. Defendant argues that since "on the next anniversary date, October 17, 1942, the policy would have less cash value than was required to carry the loan to October 17, 1942", the policy "had no additional loan value" on October 17, 1941; "the loan could not be extended from October 17, 1941, to October 17, 1942, because there was not enough cash value in the policy to equal the loan plus interest to that date". This argument does not find basis in the policy. The loan provision states the company will advance "a sum which, with interest, shall not exceed the cash value at the end of the then current policy year". This does mean that, in ascertaining whether a loan requested is not too large, interest is calculated in advance (though not payable until the end of the policy year) and the total of loan and interest to the end of the policy year is compared with the cash value at the end of the policy year. So, if the insured had first applied for a loan of $4,530.93 (using the same figure) on October 17, 1941, the company would not have granted it, for with interest to October 17, 1942, it would exceed the policy value on October 17, 1942. But the policy clause does not by its terms relate to the extension or repayment of the loan after it is granted. It contains no requirement of

repayment of a loan on the policy anniversary following its creation, nor for its renewal on a yearly basis thereafter. The last sentence in the loan provision states that "failure to repay such loan or to pay interest thereon shall not avoid this policy unless the total indebtedness hereon shall equal the total loan value"; but that does not express an intention that interest and policy value are calculated in advance on a yearly basis in determining the time when forfeiture of the policy may result. Surely it does not meet the requirement laid upon insurance companies that their contracts be clear and unambiguous, especially as to forfeitures.

Defendant itself recedes from this argument when it contends that on December 9, 1941 (rather than on October 17, 1941), the loan value of the policy became used up, the total indebtedness with interest to that date exceeded the cash and loan value on that date by 32 cents, and the policy became cancelable then. Interest and policy value were thus calculated on a day-to-day accrual basis for the purpose of determining the time of forfeiture. But here, too, we see no policy provision. The policy states "Interest shall be at the rate of 6% per annum, and shall be payable on the premium anniversary date of this policy". This must mean interest is payable at the end of the policy year, not the beginning, and certainly not in between. The general rule is that in the absence of a specific provision interest is not payable in advance; the rule is true of contracts generally: Owens v. Graetzel, 146 Md. 361, 368, 126 Atl. 224 (1924) ; In re Payne's Will, 171 Wis. 608, 613, 177 N. W. 858 (1920) ; Koehring v. Muemminghoff, 61 Mo. 403, 406 (1875) ; 30 Am. Jur. 12, §10; and of insurance contracts in particular: Equitable Life Assurance Society of the United States v. Brandt, 240 Ala. 260, 270, 198 So. 595 (1940) ; Missouri State Life Ins. Co. v. Bozeman, 48 Ga. App. 640, 173 S. E. 183 (1934) ; Livingston v. Mutual

Benefit Life Ins. Co., 173 S. C. 87, 174 S. E. 900 (1934). The interest provision quoted above is not a specific requirement that interest be paid in advance.[2] Its plain meaning is that the succeeding anniversary date is the time interest is payable, and cases involving such policy language have so held. See Roeser v. National Life Ins. Co., supra, Metropolitan Life Ins. Co. v. Calkins, 66 Ga. App. 245, 17 S. E. (2d) 594 (1941), New York Life Ins. Co. v. Shivley, 188 Ark. 1044, 69 S. W. (2d) 392 (1934). But cf. Mills v. Equitable Life Assurance Society of the United States, 262 App. Div. 907, 28 N. Y. S. (2d) 1013 (1941). Indeed, only as to those loans executed on premium anniversary dates could this clause possibly be construed to be operative prior to the succeeding anniversary date. As to loans made on any other date, as in this case, interest could not be payable until the succeeding policy date. It is a defiance of the definition of interest to contend that a loan made on January 17, 1940, bears interest at six percent from October 17, 1939. Moreover, such charge would not only result in usurious interest, but would violate established practice in regard to charges for the use of money, and defendant does not maintain such a position here. But its contention that interest is payable on an accrual basis is just as far from reality, for the provision is that interest is payable on the "premium anniversary date" of the policy, which occurs at only one time each year.

Nor does the definition in the policy pointed to by defendant that "loan value is the cash value less interest to the premium anniversary date" warrant calculation of interest on indebtedness in advance or on

---

[2] It would have been easy for the company to be specific concerning the payment of interest in advance. See, e.g., Murray v. Prudential Insurance Company of America, 144 Pa. Superior Ct. 178, 182 (1941): "The insured may borrow from the company with interest *at the rate of five percent per annum, payable annually in advance* . . ."

an accrual basis. Nothing in that clause relates to the time of payment of interest. It indicates the formula for determining the "loan value" and nothing more. Forfeiture takes place when the "total indebtedness" equals the total loan value, and it is rather with the determination of "total indebtedness" that we are here concerned, for without the addition of interest covering any period after October 17, 1941, the total indebtedness under the policy would not equal the total loan value at any time prior to the assured's death.

Defendant also urges as supporting its position section 410 (*h*) of The Insurance Company Law of May 17, 1921, P. L. 682, as amended by the Act of July 15, 1935, P. L. 1020, 40 PS §510 (*h*), which provides that "No policy . . . shall hereafter be issued . . . unless it contains, in substance, the following provisions: . . . (*h*) A provision that . . . the company . . . will advance . . . a sum equal to . . . the reserve at the end of the current policy year . . . and that the company will deduct from such loan value any existing indebtedness on the policy . . . and may collect interest in advance on the loan to the end of the current policy-year . . ."

The policy here involved was issued prior to this enactment, and is not affected by it, but I point out that the statute is permissive with respect to the prepayment of interest and it still remains that the contract must by express provision utilize the right conferred, which was not done in this policy.

Lastly, I think it well to call attention to another side of this case, though not objected to by plaintiff nor raised by her counsel. The company compounded the interest on the insured's indebtedness on each anniversary date, though no express warrant for so doing appears in the policy. Such practice was disapproved in Murray v. Prudential Insurance Company of America, supra. The court in that case said (p. 184):

"It is well established that the law does not favor compound interest or interest on interest; and the general rule is that in the absence of contract therefor, express or implied, or of statute authorizing it, compound interest is not allowed to be computed on a debt: 33 C. J. §36, p. 191".

As in that case, defendant here, by computing the interest on insured's indebtedness, computed the total indebtedness to be equal to the loan value too soon, even accepting defendant's position that interest was payable on an accrual basis. From the figures in the policy, it is clear that the indebtedness with simple interest to January 2, 1942 (approximately $4,571), would not have been greater than the cash value calculated as of that date (approximately $4,574).

We conclude that the loan value exceeded the indebtedness on October 17, 1941; that interest was not due until October 17, 1942; that the company could not accrue the interest to a point where value was exceeded by indebtedness by 32 cents; that, consequently, on the date of the insured's death his policy was still in force. Accordingly we enter the following

### Order

And now, October 9, 1942, the rule for judgment for want of a sufficient affidavit of defense is made absolute, and judgment is hereby entered in favor of plaintiff and against defendant in the sum of $2,390.09,[3] with interest thereon from January 30, 1942.

---

[3] This is the amount asked by the rule for judgment, though on the basis of a calculation of total indebtedness, including simple, rather than compound, interest, the amount would be slightly higher.