6 So.2d 494

**ROYAL INS. CO., Ltd., v. ALL STATES THEATRES, Inc.**

**7 Div. 668.**

Supreme Court of Alabama.

Feb. 19, 1942.

Rehearing Denied March 12, 1942.

418

Coleman, Spain, Stewart & Davies, of Birmingham, for appellant.

C. W. Stringer, of Talladega, for appellee.

THOMAS, Justice.

The complaint was not subject to demurrer. The use of the expression in the complaint "in the policy of insurance" imports that it was a written and not a verbal contract, and founded on a valuable consideration. Travelers' Ins. Co. v. Whitman, 202 Ala. 388, 80 So. 470; Prudential Casualty Co. v. Kerr, 202 Ala. 259, 80 So. 97.

With commendable judgment, appellee's counsel observes of the two hundred assignments of error that they will be considered in the same order in which they have been discussed in brief of counsel for appellant. This court will, in like manner, attempt to consider the material questions to be decided as presented by the record, the assignments of error and argument of counsel.

It appears to be a primary question to be decided, whether the contract declared on, and by which plaintiff insured its property against loss by fire with defendant, was a valid contract or not. It is insisted that the failure of plaintiff to comply with the laws of the State of Alabama relative to a foreign corporation qualifying to do business in the state would render such insurance contract void by reason of noncompliance.

It is insisted that the answer is found in whether or not such contract of insurance was the exercise of any function for which the corporation was created, and within the requirements of the Alabama statutes, conditioned upon the restrictions of foreign corporations "engaging in or transacting any business in this state" before a due qualification. Code 1923, §§ 7208, 3731, 7209–7220, Code 1940, T. 10, §§ 191, 192–196. The words of the statute "engaging in or transacting any business" do not differ from the constitutional phrase, "shall do any business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association." Constitution 1901, § 232; Beard v. Union & American Pub. Co., 71 Ala. 60; Ford Motor Co. v. Hall Auto Company, 226 Ala. 385, 388, 147 So. 603; May, Sheriff, et al., v. Strickland, 235 Ala. 482, 180 So. 93; Davis v. Jones, 236 Ala. 684, 184 So. 896; Bolton v. White Motor Co., 239 Ala. 168, 194 So. 510; Sullivan v. Sullivan Timber Co., 103 Ala. 371, 15 So. 941, 25 L.R.A. 543; General Motors Acceptance Corp. v. Home Loan & Finance Co., 218 Ala. 681, 120 So. 165; Ex parte Kemp et al., 232 Ala. 434, 168 So. 147.

The sustaining of demurrer to pleas 7, 8, 9, 10, 11, 12 and 23 is challenged by assignment of error and in argument as a primary question.

They relate to the sustaining of demurrer to appellant's pleas setting up facts to the effect that the plaintiff (appellee) was incorporated in the State of Michigan, took out the policy of insurance upon which this suit is brought in the State of Alabama, and at its place of business in Talladega on property situated in the State of South Carolina and on which it was then doing improvements for the conduct of its business there, and that at such time the plaintiff insured had not qualified as a corporation to do business in the State of Alabama, and that, therefore, the contract of insurance declared upon was void.

Appellee's counsel insist that such contract of insurance was not void in that the taking out of the insurance in Talladega, Alabama, was the mere exercise of a corporate power and was not engaging in or transacting any business; that not every act done within the corporate power will constitute transacting "business" as meant by the Alabama Law.

It is further insisted by appellee that this court in Friedlander Bros., Inc., v. Deal et al., 218 Ala. 245, 118 So. 508, held that a foreign corporation organized and chartered to do a mercantile business and authorized to buy, lease or hold real estate suitable for the purpose of such corporation could lawfully lease for its intended and future use a storeroom in Alabama without complying with the Alabama incorporation laws indicated, and that the execution of such a lease before engaging in the business in question did not constitute the transacting of business within the meaning of such inhibitory statutes. It is insisted that this court there made a distinction between an initial, incidental and preliminary step necessary to the doing of business by a foreign corporation and the further required act of the doing or transacting of the business by such corporation in the state that was required by the laws indicated.

The instant pleas show that the property sought to be insured by plaintiff was in South Carolina, and was to be employed in the doing of its corporate business in said state, and not in the State of Alabama, where the principal place of business of the instant foreign corporation was located. That is to say, we have a Michigan Amusement Corporation taking a policy of insurance for the appellee corporation with its principal place of business at Talladega, in the State of Alabama, to insure its properties being prepared for use as an All States Theatre in the State of South Carolina. Said foreign corporation with its office in Talladega, Alabama, has not complied with the aforementioned requirements of law as to such foreign corporation before transacting said business in the State of Alabama. Thus the question presently for consideration is whether or not appellee was doing business in the State of Alabama in violation of law in the procuring of the contract of insurance in Alabama on its properties located in South Carolina.

Plea 23 shows that the making of the contract of insurance in Alabama was a part of the general corporate function of the plaintiff corporation. The charter sets out its purpose to that effect and gives the power not only to engage in the general amusement business, but gives other and sundry powers and to enter into and perform contracts with any person and to conduct its business anywhere. At the time of the fire it is insisted that plaintiff was engaged in the operation of its motion

picture theatre business in Union, South Carolina, as a part of plaintiff's business, the subject of its procurement of its contract of insurance in Alabama and sued on in this state. That is to say, the application for the policy of insurance was taken in Alabama and at its place of business in Talladega and that the policy was delivered at such place. Under the authorities construing our Constitution and statutes, this made the insurance so procured, taken and delivered in Alabama, the doing of business in Alabama.

Plea 23 states as follows:

"Defendant further avers that plaintiff is a foreign corporation organized under the laws of the State of Michigan. A true and correct copy of the charter of plaintiff corporation is hereto attached and marked Exhibit 'A' and expressly made a part of this plea. Defendant further avers that plaintiff corporation has never complied with the statutes and laws of the State of Alabama and has never qualified to do business in the State of Alabama as a corporation, and has not, prior to the filing of this suit, filed with the Secretary of State of Alabama a certified copy of its articles of incorporation or association and has not filed with the State of Alabama an instrument in writing under the seal of the corporation and signed officially by the President and Secretary thereof, designating at least one known place of business in this State and an authorized agent or agents residing thereat, and had not, prior to the bringing of this suit procured from the State Tax Commission of the State of Alabama a permit to do business in the State of Alabama. Defendant further avers that the contract sued upon was made in Alabama by the plaintiff corporation and was delivered to plaintiff in Alabama. Defendant further avers that the plaintiff corporation at said time was otherwise engaged in the doing and transacting of a substantial part of its ordinary business in the State of Alabama. Defendant further avers that the principal or chief office of plaintiff corporation was located at Talladega, Alabama and at said place stockholders and Board of Directors meetings were held prior to the fire. At said place and prior to the fire the plaintiff corporation did sell stock in plaintiff corporation and did enter into a contract for the purchase of equipment and other articles which were afterwards used by it in the operation of its motion picture theatre in Union, South Carolina. Defendant further avers that prior to the fire the plaintiff corporation had one or more bank accounts in banks at Talladega, Alabama; that prior to the fire plaintiff corporation was engaged in the operation of a motion picture theatre in Union, South Carolina, and the principal offices of plaintiff corporation were located in Talladega, Ala. That numerous and sundry contracts were made in Talladega by plaintiff corporation in the conduct and carrying out of said business. That money taken in by plaintiff corporation in the operation of said theatre in Union, South Carolina, or a large part thereof, was transmitted from Union, South Carolina, to plaintiff corporation in Talladega, Alabama, and there deposited in one or more banks in Talladega, Alabama. Defendant further avers that a large part of the business of operating said theatre at Union, South Carolina, was carried on or conducted in Talladega, Alabama, and as a part thereof the plaintiff made and entered into the contract sued upon and delivered at Talladega, Alabama. Defendant further avers that the contract for leasing the building upon which the betterments and improvements claimed to have been damaged or destroyed by fire were placed, was executed by the plaintiff corporation in Talladega, Alabama. Wherefore, the defendant avers that plaintiff ought not to recover upon the contract sued upon."

In Bankers' Fire & Marine Ins. Co. v. Sloss, 229 Ala. 26, 155 So. 371, it is declared on the authority of State Life Ins. Co. v. Westcott, 166 Ala. 192, 52 So. 344, 345, supra, and many other decisions there cited, that the business of insurance is recognized generally as affected with a general or public interest, and is within the police power of the state to reasonably safeguard and protect, and that this right is exercised as indicated in the Westcott case, supra, and by the statutes in question.

Here we may remark that the engaging in litigation within the state before qualification under the law does not constitute doing business within the State. In Franklin Life Ins. Co. v. Ward, 237 Ala. 474, 480, 187 So. 462, the contract in question was made in another state. See Citizens' Nat. Bank v. Buckheit, 14 Ala.App. 511, 71 So. 82.

It follows from the foregoing that a foreign corporation cannot maintain a suit in Alabama on its Alabama contract (not an interstate transaction) until it has first qualified to do business as a foreign

corporation and placed itself in a position to be sued in the courts of Alabama. Alabama Western R. Co. v. Talley-Bates Const. Co., 162 Ala. 396, 50 So. 341; George M. Muller Mfg. Co. v. First Nat. Bank of Dothan, 176 Ala. 229, 57 So. 762; Coburn v. Coke, 193 Ala. 364, 69 So. 574; State v. Bristol Sav. Bank, 108 Ala. 3, 18 So. 533, 54 Am.St.Rep. 141.

In American Amusement Co. v. East Lake Chutes Co., 174 Ala. 526, 527, 56 So. 961, 962, it is said:

" * * * For defense the defendant pleads specially that plaintiff is a foreign corporation, and that in performing the contract sued on plaintiff was doing business in the state of Alabama without having complied with the requirements of section 232 of the Constitution and sections 3642 and 3643 of the Code of Alabama [Code 1940, Tit. 10, §§ 192, 193].

"1. This plea unquestionably states a good defense to the action, and, if supported by proof, would have entitled the defendant to judgment. The demurrers to the plea were properly overruled. Alabama Western R. Co. v. Talley-Bates Const. Co., 162 Ala. 396, 50 So. 341; Ware v. Hamilton Brown Shoe Co., 92 Ala. 145, 9 So. 136."

In the sustaining of demurrer to plea 23, there was error to reverse.

■ It is established by well considered general authorities that a foreign corporation is doing, transacting, carrying on, or engaging in business within a state when it transacts some substantial part of its ordinary business therein. 20 Corpus Juris Secundum, Corporations, § 1829, p. 46. The text is illustrated by cases to the effect that the making within the state of sales or of contracts for the sale of goods; the making of loans (Farrior v. New England Mortgage Security Co., 88 Ala. 275, 7 So. 200); the making of contracts of insurance (Thorne v. Travelers' Ins. Co., 80 Pa. 15, 21 Am.Rep. 89; 14A C.J. p. 1272, note 84; 20 C.J.S., Corporations, § 1829); the construction of railroads (Alabama Western R. Co. v. Talley-Bates Const. Co., 162 Ala. 396, 50 So. 341; 14A C.J. p. 1272 note 91; 20 C.J.S., Corporations, § 1829); the assembling, erection, or installation of machinery and of office fixtures (George M. Muller Mfg. Co. v. Dothan First Nat. Bank., 176 Ala. 229, 57 So. 762), constitute "doing business" within this state.

Because of the terms of our statute which prohibit noncomplying corporations from doing business (Boddy v. Continental Inv. Co., 18 Ala.App. 65, 88 So. 294; Coburn v. Coke, 193 Ala. 364, 69 So. 574; State v. Bristol Sav. Bank, 108 Ala. 3, 18 So. 533, 54 Am.St.Rep. 141; 14A Corpus Juris, p. 1275 note 12; 20 C.J.S., Corporations, § 1830; Chattanooga Nat. Bldg. & Loan Ass'n v. Denson, 189 U.S. 408, 23 S.Ct. 630, 47 L.Ed. 870), such single and isolated transactions without qualification within the Alabama laws were held to be prohibited.

■ It is the holding of well-considered general authorities that a contract which is declared void or illegal or unenforceable by the laws of the state where it is made, cannot ordinarily be enforced in any other state or country. The rule as to this is stated in 23 Am.Jur. p. 329, § 353, as follows:

"In accordance with the general rule that where a contract is declared void or is shown to be illegal by the law of the state or country where it is made, it cannot ordinarily be enforced as a valid contract in any other state or country, it is generally held that contracts and transactions of a foreign corporation void in the state where made or entered into because of noncompliance with statutory regulations will not be given effect by the courts of another state or by the Federal courts; and a similar rule is apparently applicable to contracts which the state may constitutionally, and does, make void for noncompliance with the local statutes, even though entered into outside the state. In the absence, however, of any statute expressly declaring the contracts of a noncomplying corporation void, if the courts of the state have not construed the statutes as so declaring, such a corporation is entitled to maintain an action to enforce a contract in the courts of another jurisdiction, or in a Federal court having jurisdiction of the defendant and of the subject matter of the action."

The text cites the following authorities: Strampe v. Minnesota Farmers' Mut. Ins. Co., 109 Minn. 364, 123 N.W. 1083, 26 L. R.A.,N.S., 999, 134 Am.St.Rep. 781; Annotation: 26 L.R.A.,N.S., 999 et seq.; Ann.Cas.1914A, 705, 706. Annotation, 56 L.Ed. 1177; 26 L.R.A.,N.S., 1000; 13 Ann. Cas. 513; Ann.Cas.1914A, 706.

■ The pleas undertaking to show that the contract was invalid under South Carolina law are not good and are subject to

the demurrers directed thereto. Citizens' Nat. Bank v. Buckheit, 14 Ala.App. 511, 71 So. 82.

The action of the trial court in overruling appellant's demurrers to replication No. 2 to plea No. 17 and plea No. 18 is assigned as error. These pleas set up the Michigan law and the fact that under that law the contract sued upon was null and void. Plea No. 18 set up that the charter of plaintiff corporation had become void at the time of the issuance of the contract of insurance sued upon and that the contract is null and void. In reply thereto, plaintiff filed replication No. 2, in which it sets up the Michigan corporation law which provides that in winding up the business of a dissolved corporation, the corporation continues in business for three years. This section of the Michigan statute is no answer to the Michigan statutes set out in these pleas that the contract was void when made by the corporation in Alabama for insurance in South Carolina. Under the Michigan decisions a contract entered into by a corporation whose powers are in suspense is a void contract and no action can ever thereafter be maintained thereon. Irvine & Meier v. Wienner, 212 Mich. 199, 180 N.W. 492; Detroit United Fruit Auction Co. v. Kroger Grocery & Baking Co., 227 Mich. 412, 198 N.W. 947; Meldman Cartage Co. v. Fruehauf Trailer Co., 271 Mich. 304, 259 N.W. 905; Motor City Eng. Co. v. Fred E. Holmes Co., 241 Mich. 446, 217 N.W. 25; Nedeau v. United Petroleum, 251 Mich. 673, 232 N.W. 202; Mishke v. Eddy Realty Co., 241 Mich. 501, 217 N.W. 900; Division Ave. Realty Co. v. McGough, 274 Mich. 163, 264 N.W. 328; Eastman Co. v. Beasley, 285 Mich. 74, 280 N.W. 115.

The case of Detroit United Fruit Auction Co. v. Kroger Grocery & Baking Co., supra, 227 Mich. 412, 198 N.W. 947, 948, is in point. The suit was brought by plaintiff, a Michigan Corporation. The defendant pleaded as defense that at the time of making the contract sued upon plaintiff corporation was in default for not having filed its report with the secretary of state as required by section 9028, C.L.1915, and that, therefore, it could not maintain its action. The Court, in holding that plaintiff corporation could not sue upon said contract under the laws of the State of Michigan, said, in part, as follows:

"At the time of the contract for the sale of the goods in question the law then in effect required the plaintiff corporation to file its report annually with the secretary of state in January or February.

"'If any corporation neglect or refuse to make and file the reports required by this section within the time herein specified, and shall continue in default for ten days thereafter, its corporate powers shall be suspended thereafter, until it shall file such report, and it shall not maintain an action in any court of this state upon any contract entered into during the time of such default.' Section 9028, C.L.1915 (Act 232, P.A.1903.)

"The plaintiff did not file its report for the year 1916 until April 16, 1917. The contract in question was made on the 5th of April, 1917, at which time the plaintiff's corporate powers were suspended, and it could not make a legal contract. * * *

"The contract upon which the action is based was unlawful at the time it was made. It is still unlawful. The question is ruled by Irvine & Meier v. Wienner, 212 Mich. 199, 180 N.W. 492, in which case this court held that, while the power to contract was suspended, the defaulting party could not make a contract which would ever have any validity, that the inhibition imposed by the statute against enforcement continued not only during default but for all time. In the instant case the contract sued upon had no legal existence. The action cannot be maintained."

In the case of Nedeau v. United Petroleum, 251 Mich. 673, 232 N.W. 202, 204, the Michigan Supreme Court said, in part, as follows:

"It is conceded that no such reports were filed in July or August, 1929. Plaintiffs' right to do business became thereby suspended, and it had no right to file the bill of complaint herein 'during the time of such default.' Motor City Eng. Co. v. [Fred E.] Holmes Co., 241 Mich. 446, 217 N.W. 25.

"A decree may be here entered dismissing the bill of complaint, with costs to appellant, but without prejudice to the rights of Peters or of the trustees after such default shall have been removed."

The rule was also clearly laid down in the case of Mishke v. Eddy Realty Co., 241 Mich. 501, 217 N.W. 900, 902, when at the time the defendant acquired the option agreement, which it was seeking to enforce by a cross-action, it had not filed its annual report. The court in holding that the

424

option agreement was void and unenforceable said as follows:

"Inasmuch as it was conceded that the defendant was in default when the option agreement was made, the court should have declared the option agreement void."

Such is the holding of the many other cases from the Michigan jurisdiction herein set out above.

We are of opinion, under the foregoing authorities, that the replications of plaintiff to defendant's pleas 17 and 18 were not well taken, and that demurrer should have been sustained thereto.

It is true that the instant plaintiff company had not subjected itself to local control in Alabama by compliance with its foreign corporation laws hereinbefore set out, but had so subjected itself to such laws by maintenance of its main office of business and taking out of insurance at its Talladega, Alabama, place of business under its charter exhibited to the plea. These matters were within the police powers and bounds of control of the State of Alabama and were sought to be duly pleaded in the trial court, which was denied.

The foregoing renders unnecessary the consideration of any other assignments of error and will be a guide to the shaping of proper issues if further suit is sought to be maintained on the Alabama contract either here or in other jurisdictions.

It results that the judgment of the circuit court is infected with error and the cause is reversed and remanded.

Reversed and remanded.

GARDNER, C. J., BROWN, and FOSTER, JJ., concur.