14 So.2d 690

**SMITH v. PENN MUT. LIFE INS. CO.**

**4 Div. 279.**

Supreme Court of Alabama.

May 20, 1943.

Rehearing Denied June 30, 1943.

Further Rehearing Denied Aug. 7, 1943.

Ball & Ball, of Montgomery, for appellee.

D. M. Powell, of Greenville, and R. B. Albritton, of Andalusia, for appellant.

**BROWN, Justice.**

Action of assumpsit by appellant against appellee for a sum of money alleged to be due on a policy of life insurance issued to the plaintiff's intestate by the defendant on March 25th, 1901, insuring the life on which all his premiums had been paid,—in short a paid-up policy.

The pleas were the general issue, pleaded in short by consent, with leave to give in evidence matters of special defense as if properly pleaded.

The special defense relied on, which finds support in the evidence, is that the policy automatically lapsed, without notice, under the terms of a certificate of indebtedness, evidencing an indebtedness, on account of the nonpayment of interest, alleged to have become due, on March 25, 1938.

Paragraph "X" of the policy stipulates: "Loan Value. The Company will at any time, after three years' premiums have been paid in cash, while the Policy is in force by payment of premiums, lend thereon upon its satisfactory assignment as collateral security, the sum named in the table of values given below. No loans will be made for a less sum than Fifty Dollars, and only in Multiples of Five Dollars, and shall be diminished by any indebtedness outstanding against the policy." R. p. 8.

The policy issued on the written application of the insured Eugene Russell Smith, resident address Lowndesboro, Lowndes County, Alabama, on the 19th of March, 1901, and witnessed by Chas. W. Powell, Lowndesboro, Alabama. Said application was embodied in the policy as required by the statute in force at that date. Code 1896, § 2602. See Code 1940, T. 28, § 75.

The certificate of indebtedness, as appears on its face, was "Signed, sealed and delivered," in the presence of the subscribing witness R. W. Russell, by the insured "Eugene R. Smith," in Alabama, in pursuance of the provisions of said policy No. 181126, insuring the life of said Smith.

The evidence is without dispute that the defendant in lapsing the policy, in the absence of partial payments, added unpaid interest from year to year during the years 1935, 1936, 1937 and 1938, to the principal and calculated interest on the sum produced by such addition, in consequence of which, on March 25th, 1938, the loan exceeded the cash surrender value by $7.02.

Nevertheless the defendant did not rely on automatic cancellation as of March 25th, 1938, but two months later, as stated in its brief, "On May 16, 1938, the Company cancelled the policy and again, although neither the policy nor the loan certificate required notice of cancellation, the Company did on May 16, 1938, so notify Dr. Smith by letter (Transcript page 30). Mrs. Smith says he did not get this either, but that is also immaterial as no notice was actually required."

On the question as to whether or not the defendant, before foreclosing the pledge and forfeiting the collateral gave the insured notice, the evidence is in dispute. That on the part of the defendant tends to show that notice was given by letter sent through the United States Mail from Philadelphia to the said Eugene R. Smith, addressed to his place of residence in Alabama, postage prepaid, and that the envelope had a return address printed on the upper left hand corner of the envelope, the correct address of the sender, for its return if not delivered, and that such letters were never returned. The letter stated the indebtedness with interest exceeded the cash surrender value by something over seven dollars.

The evidence offered by plaintiff goes to show that such notices never reached the addressee.

■ The provision of the policy defining the loan and cash surrender value, showing that such value increases with age, is an essential part of the certificate of indebtedness based on such loan value and the two writings will be construed together as the contract between the parties. Montgomery Enterprises v. Empire Theater Co., 204 Ala. 566, 86 So. 880, 19 A.L.R. 987.

Under the provisions of our statute, "All contracts of insurance, the applica-

tion for which is taken within the state, shall be deemed to have been made within this state, and subject to the laws thereof." Code 1940, T. 28, § 10. This was the law of Alabama when these writings were entered into between the parties. Code 1896, § 2606.

■ This statute does not offend the provisions of the Constitution of the United States, and cannot be overridden by provisions in the contract. State Life Ins. Co. v. Westcott, 166 Ala. 192, 52 So. 344; Travelers' Ins. Co. v. Whitman, 202 Ala. 388, 80 So. 470; Royal Ins. Co. v. All States Theatres, 242 Ala. 417, 421, 6 So.2d 494.

■ "The statute is not directory only, or subject to be set aside by the company with the consent of the assured; but it is mandatory, and controls the nature and terms of the contract into which the company may induce the assured to enter." Equitable Life Assur. Society v. Clements, 140 U.S. 226, 233, 11 S.Ct. 822, 825, 35 L. Ed. 497; Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 6 Cir., 72 F. 413, 418, 19 C.C.A. 286, 38 L.R. A. 33.

■ Moreover the defendant, although a foreign corporation, qualified to transact its insurance business in Alabama, was for this purpose a resident of Alabama. Barrow Steamship Co. v. Kane, 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964; Dunlap Pneumatic Tyre Co. v. Actien-Gesellschaft, etc. [1902] 1 K.B. 342; Royal Ins. Co. v. All States Theatres, supra.

■ The majority opinion in New York Life Ins. Co. v. Dodge, 246 U.S. 357, 38 S.Ct. 337, 62 L.Ed. 772, Ann.Cas.1918E, 593, based on the concept that the right to contract was a part of the liberty secured by the Constitution of the United States, and not subject to regulation or control of the police power of the state, sustained the contract in that case against a Missouri statute, on the ground that the contract, according to its provisions, was made in and governed by the laws of New York. This concept of liberty was repudiated in our case which, following the drift of modern civilization, held that the right to contract is subject to the police power of the state; State v. Polakow's Realty Experts, 243 Ala. 441, 10 So.2d 461; Royal Ins. Co., Ltd., v. All States Theatres, Inc., 242 Ala. 417, 6 So.2d 494.

In the Dodge case, supra, a strong and more logical opinion by Mr. Justice Brandeis, concurred in by Justices Day, Pitney and Clarke, held that the contract was made in Missouri and governed by the laws of that state, notwithstanding the provisions in the contract to the contrary.

■ In Hoopeston Canning Co. et al. v. Pink, 63 S.Ct. 602, 605, 87 L.Ed. ——, decided March 1, 1943, by the Supreme Court of the United States, the principles of the dissenting opinion in the Dodge case are in effect approved. It was there said:

" * * * To insure the protection of state interests it is now recognized that a state may not be required to enforce in its own courts the terms of an insurance policy normally subject to the law of another state where such enforcement will conflict with the public policy of the state of the forum. Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462.

" * * * Nothing in the Constitution requires a state to nullify its own protective standards because an enterprise regulated has its headquarters elsewhere. The power New York may exercise to regulate domestic insurance associations may be applied to foreign associations which New York permits to conduct the same kind of business. The appellants can not, 'by spreading their business and activities over other states * * * set at naught the public policy' of New York. Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 427, 57 S.Ct. 772, 778, 81 L.Ed. 1193, 112 A.L.R. 293. Where as here the state has full power to prescribe the forms of contract, the terms of protection of the insured, and the type of reserve funds needed, 'the mere fact that state action may have repercussions beyond state lines is of no judicial significance.' Osborn v. Ozlin, supra, 310 U.S. [53], at page 62, 60 S.Ct. [758] at page 761, 84 L.Ed. 1074. Neither New York nor Illinois loses the power to protect the interests of its citizens because these associations carry on activities in both places. Alaska Packers Association v. Industrial Accident Commission, supra [294 U.S. 532, 542, 55 S.Ct. 518, 79 L.Ed. 1044] * * *."-[Brackets supplied.]

■ And in Royal Insurance Co., Ltd., v. All States Theatres, Inc., supra, 242 Ala. 421, 6 So.2d 497, it was observed: "In Bankers' Fire & Marine Ins. Co. v. Sloss, 229 Ala. 26, 155 So. 371, it is declared on

the authority of State Life Ins. Co. v. Westcott, 166 Ala. 192, 52 So. 344, 345, supra, and many other decisions there cited, that the business of insurance is recognized generally as affected with a general or public interest, and is within the police power of the state to reasonably safeguard and protect, and that this right is exercised as indicated in the Westcott case, supra, and by the statutes in question." That is to say, the statute [Code 1940, T. 28, § 10] "is mandatory, and controls the nature and terms of the contract *into which the company may induce the assured to enter.*" 166 Ala. 196, 52 So. 345. [Italics supplied.]

In the instant case, as we have shown, the certificate of indebtedness shows on its face that it was executed *and delivered* in the presence of the subscribing witness to Smith's signature, in Alabama. 29 Am. Juris. 75, § 38. There is no fixed date for the maturity of the debt nor when the pledge may become foreclosable. This depends on the earnings of the policy and its increasing value by lapsing time. These elements were known only to the pledgee who kept the exclusive records.

Appellant's first contention is that the stipulation in the certificate of indebtedness evidencing the loan that, "Interest shall accrue on the principal amount of this certificate *and all additions made thereto* in accordance with its provisions at the rate of six per cent (6%) per annum on March 25, 1932, and annually thereafter, with the understanding that any interest not paid when due shall be *added to the principal*"; is subject to two interpretations, and the court should apply the rule most favorable to the insured to prevent a forfeiture, and so construed the stipulation italicized as not authorizing the compounding of the interest. Protective Life Insurance Co. v. Thomas, 223 Ala. 106, 134 So. 488.

The interpretation contended for by appellant is that the language *"and all additions made thereto"* refers to and contemplates additional loans provided for in paragraph "X" of the policy, as the cash surrender value increases by age, the amount of such additional loans to be "diminished" by any indebtedness outstanding against the policy.

On the other hand, the appellee insists that the stipulation in the certificate of indebtedness is an express agreement to add unpaid interest to the original loan and compute interest on the aggregate,—that is compound the interest.

While there is considerable diversity of opinion on the subject, the rule of our decisions is that an express agreement to pay interest on interest, especially when such agreement is made after the maturity of the original principal, is not unlawful unless the interest so computed exceeds the legal rate for the time, and impinges the statute against usury. Gross v. Coffey, 111 Ala. 468, 477, 20 So. 428; Paulling v. Creagh's Adm'rs, 54 Ala. 646; 30 Am.Juris. 46, § 56; 27 R.C.L. 225, 226, § 26; Richardson v. Campbell, 34 Neb. 181, 51 N.W. 783, 33 Am.St.Rep. 633.

At first blush the writer was of opinion that paragraph "X" of the policy dealing with "loan value" did not contemplate or authorize cumulative loans, but after repeated consultations with my brothers, sitting in senior section, applying the rule of strict construction against the writer of the contract—the insurer,—the opinion prevails that such loans are authorized so long as the subsequent loan when added to any existing indebtedness does not equal or exceed the then value of the policy. That the stipulation in paragraph "X" that "No loan shall be made for less sum than fifty and only in multiples of five dollars *and shall be diminished* by any indebtedness outstanding against the policy" simply means that the new or cumulative loan shall not be less than fifty dollars, and when added to the existing indebtedness shall not equal or exceed such loan value.

That the stipulation that interest shall accrue on the principal amount of the certificate and all additions thereto refers to additional loans, and not interest accumulated which may be added to the principal to determine when the indebtedness equals or exceeds the loan value. At best the stipulation leaves the matter of computing interest on interest to mere inference, which under the authorities will be resolved against the party who drafted the writing. 5 Alabama Digest Contracts, ☞155, p. 69; Minge v. Green, 176 Ala. 343, 58 So. 381.

Therefore computing simple interest on the loan at the contract rate and deducting dividends conceded to be due, the indebtedness on March 25th, 1938, did not equal or exceed the loan or cash surrender value, and the policy was not subject to forfeiture. The company could not at a later date short

of the next interest payment period, March 25, 1939, forfeit the policy.

The next contention is that the pledge of the policy could not be foreclosed and the policy forfeited without notice.

There is an absence of any stipulation in the policy or the certificate of indebtedness for notice of any kind respecting the foreclosure of the pledge and forfeiture of the policy.

The stipulation is: "That if at any time additions of unpaid interest cause the total indebtedness against the above policy to equal or exceed its total loan value, the company's liability shall automatically terminate."

By express language Chapter 3, Article 1, Code 1940, T. 9, § 9, p. 88, is made applicable to insurance companies engaged in taking pledges to secure payment of loans. The term county as used in §§ 11 and 12, as applied to foreign corporations qualified to do business in Alabama, is construed to refer to the county of the designated place of business by the foreign corporation in its declaration in qualifying to do business in this state under § 232 of the Constitution and § 192 of the Code of 1940, T. 10. That county for the purpose of engaging in business by such corporation is its place of business. Sullivan v. Sullivan Timber Co., 103 Ala. 371, 15 So. 941, 25 L.R.A. 543.

There is nothing in the evidence to show that the place of residence of the pledgee [as stated above] and the residence of the pledgor was not the same. If the pledgor was a resident of the county, notice of intention to sell was required by § 11, Tit. 9, Code 1940, and § 12 of said title requires that notice of the time and place of such sale must be given by publication. Code 1940, T. 9, § 12; Code 1923, § 6746; Stanley v. People's Savings Bank, 229 Ala. 446, 157 So. 844. Neither the policy nor the certificate of loan authorizes a foreclosure of the pledge outside of Alabama. The cited statutes, enacted in the exercise of the police power for the protection of insurance policy holders and rights under insurance contracts made in Alabama, evidence the state's public policy, that such foreclosure must be made in Alabama, at the company's place of business, after reasonable notice to the insured, and not in a foreign city in a foreign state.

Life insurance is a class of investment made for the security of the family or old age security, and independent of the statute above cited in respect to notice, it is the well-settled general rule, in the absence of judicial proceedings to foreclose, that reasonable notice to redeem shall be given to the pledgor. That notice to the pledgor of the intention to sell and of the time and place of sale is also necessary, unless waived by agreement of the parties. 21 R.C.L. 690, § 50; Terry v. Birmingham Nat. Bank, 93 Ala. 599, 9 So. 299, 30 Am.St.Rep. 87; 41 Am.Juris. 643, § 83.

In Penn Mut. Life Ins. Co. v. Bancroft, 207 Ala. 617, 93 So. 566, 567, 28 A.L.R. 1102, it was stated by the learned Justice, now Chief Justice: "This loan was made something like 2½ years before the policy was paid up, but the subsequent premiums were promptly paid and the policy became paid up in November, 1915. No part of the principal or interest of this loan has been paid, and defendant company resists this suit upon the theory that on account of the default in the payment of this indebtedness—*due notice having been given to the insured*—the policy had been canceled, pursuant to the stipulation set forth in the certificate of indebtedness."

The stipulation of fact in that case recited: "Under the terms of the loan agreement, interest on the loan was due on the 5th of November of each year in advance, and about 10 days before the interest became due a notice was sent by appellant to the insured notifying him that the interest would be due on that date. A copy of this notice is set out in the record, marked 'Exhibit C', on page 17 of the record. Within a reasonable time after the due date of the interest a second notice was sent to the insured notifying him that the interest was overdue and that it should be paid without delay. Within a reasonable time subsequent to the second notice a third notice was sent to the insured * * *."

In Jones v. Mutual Life Ins. Co. of New York, 216 Ala. 437, 113 So. 314, 54 A. L.R. 1068, referring to the Bancroft case, supra, it was observed: "After several renewals of the loan, and after the last premium had been paid and the policy had become a 'paid-up' policy, the principal and accumulated interest exceeded the loan value of the policy; *and, after due notice to the insured, the company canceled the policy in accordance with the terms of the contract.* It was held that the provision for cancellation was valid, and that the company's cancellation of the policy in ac-

cordance with its terms, prior to the death of the insured, terminated its liability thereunder and defeated the beneficiary's right of recovery.

"So far as concerns the principles involved, there is no material difference between that case and the case now before us. * * *" [Italics supplied.] 216 Ala. 438, 113 So. 315, 54 A.L.R. 1068.

Moreover the original record has been examined in the Jones case and it shows that it was also tried on an agreed statement of facts, and that reasonable notice was given by the pledgee and received by the insured of the maturity of the loan and of the intention to foreclose unless the forfeiture was relieved by payment of the interest on the loan. It further appears from the record in the Jones case that a note was given as evidencing the loan signed by Jones, the insured, and his wife, the beneficiary, payable on a date certain, with interest payable annually.

In the instant case there was no fixed date on which the default authorizing a forfeiture of the pledged policy would occur; that was dependent on the accrued dividends and the constantly increasing value of the cash surrender value of the policy evidence of which was peculiarly in the hands of the pledgee—the insurance company.

Pledges of "movables" is an outgrowth of the Roman Law, and where made as collateral to an existing debt or one newly created is regarded in law and equity as security for such debt, and is to be dealt with on principles of equity and justice between the parties. 41 Am.Juris. 582; 41 R.C.L. 630, § 1. And in the absence of express waiver after maturity, such collateral cannot be forfeited without demand and notice to redeem or by judicial process. 41 Am.Juris. 643, § 83.

The pledge of the policy not being subject to forfeiture on March 25, 1938, for nonpayment of interest, the court erred in giving the affirmative charge for the defendant, and for this error the judgment is reversed.

Reversed and remanded.

THOMAS, J., concurs.

GARDNER, C. J., and FOSTER, LIVINGSTON and LAWSON, JJ., concur in the first division of the opinion dealing with the question of forfeiture for the nonpayment of interest, and holding that the pledge was not subject to forfeiture on March 25, 1938.

BOULDIN, J., dissents.

BOULDIN, Justice (dissenting).

I am of opinion that our statutes regulating the sale of collateral have no application to loans on life insurance policies of this class. By the contract, the loan is an advance on the policy alone. The borrower is not personally liable. He may repay the loan at his option. If not paid, the policy remains pledged until maturity, unless sooner terminated, and the loan is liquidated from the proceeds. This includes principal and interest. There can never arise an occasion to sell the policy as collateral. Penn Mutual Life Ins. Co. v. Bancroft, 207 Ala. 617, 93 So. 566, 28 A.L.R. 1102.

I am unable to concur with the majority in their construction of the stipulation of the policy, which reads: "Interest shall accrue on the principal amount of this certificate *and all additions made thereto* in accordance with its provisions at the rate of six per cent (6%) per annum on March 25, 1932, and annually thereafter, with the understanding that any interest not paid when due shall be *added to the principal.*"

I think this provision clear and unequivocal, not subject to two interpretations. The clause must be read as a whole. To say "all additions made thereto" means only additional loans, is to strike out the last clause, which specially declared interest not paid when·due shall be "added to the principal." It seems to me this can only mean this is one of the "all additions" to be added to the principal and bear interest as part thereof.

When the terms of an accumulation policy of this kind are considered, this is a fair stipulation. The table of cash or loan values, and dividend provisions accrue to the policy holder who has a loan thereon, the same as a non-borrower; and the borrower who pays interest on his loan receives no greater dividend or accumulation in cash value than the borrower who does not pay his interest. That all shall share alike, the annual interest, if not paid by the borrower, is paid from his accumulations, still in the hands of the insurer. The investment is thus increased, just as it would be increased by paying in the annual interest, enhancing the fund for in-

vestment on behalf of the policy-holder. Unless unpaid interest installments become part of the principal and bear interest, the non-paying borrower shares in the returns for investments to which he has not contributed. In effect, he is favored over those who do pay the interest on their loans. The stipulation here aims at equality of burden where there is equality of benefit. 8 Couch Encyclopedia of Ins. Law, § 1943. It is not a case of compound interest solely for the benefit of the lender.

### On Rehearing.

BROWN, Justice.

The contention of appellee is that the provision in the certificate of indebtedness, providing as it contends, for compound interest, is like unto the way of holiness, so plain that "wayfaring men, though fools, shall not err therein" [Isaiah 35:8]. This contention is refuted by the facts. Able counsel has devoted pages of typewritten brief to support that contention; while opposing counsel—seasoned lawyers of long experience in the active practice, and as sanguine as he—contend that it does not so provide; and after full and painstaking consideration of the question in general conference, the Justices of this Court, some of whom have been dealing with the law of contract for more than a half century, have not been able to reach a unanimous conclusion in the interpretation of the writing. Appellee concedes however that if the writing is susceptible to two interpretations that most favorable to insured must prevail. We, therefore, adhere to our views as expressed in the opinions heretofore promulgated.

Much might be said in answer to the fallacious argument that a paid-up policy of life insurance has no market value, and hence a pledge of such choses in action to secure the repayment of loans is not within the influence of our statutes or the common law dealing with the foreclosure of pledges, although the statute expressly applies to "all banking, insurance, and other corporations, private bankers, brokers, and other persons engaged in the business of making discounts or lending money, or taking or receiving a collateral for a loan or discount, if demanded, must give to the borrower, or to his agent or attorney, a receipt," etc. Code 1940, T. 9, § 9. And sections 11 and 12 provide for notice of foreclosure.

The writer deems it sufficient to say that the history of life insurance and its development refutes that argument. It is recognized everywhere that a natural person has unlimited insurable interest in his own life, and as observed by Mr. Justice Holmes of the Supreme Court of the United States more than a quarter of a century ago, "Life insurance has become in our day one of the best recognized forms of investment and self-compelled saving." Grigsby v. Russell, 222 U.S. 149, 32 S.Ct. 58, 59, 56 L.Ed. 133, 36 L.R.A.,N.S., 642, Ann.Cas.1913B, 863.

And this court has treated such property as assets of a bankrupt's estate subject to public sale and the purchaser may acquire the policy and the right to mature it, and eventually recover the money due on such policy, though the insured comes to his death at the hands of the law. See Weil v. Travelers' Insurance Co., 16 Ala.App. 641, 80 So. 348, for history of the policy, and for result of the litigation, Ex parte Weil, 201 Ala. 409, 78 So. 528.

Such paid up policies are regarded as good security in banking circles and acceptable as pledges for loans of money, and as observed by the Kentucky Court in New York L. Ins. Co. v. N. L. Curry & Bro., 115 Ky. 100, 72 S.W. 736, 738, 61 L.R.A. 268, 103 Am.St.Rep. 297, "there is no perceivable reason why the insurance company lending the money is, or can be, in a different position from any other lender of the money had the policy been assigned to the latter as collateral, and a default in payment of the interest had occurred. If it loans money on its policies held by its policy holders, its rights as lender are exactly what they would be if, instead of the policies, the borrower pledged stocks, bonds, or policies in other companies, or gave a chattel or real estate mortgage to secure the loan. There is nothing in appellant's business, or charter rights, so far as we are advised, which entitles it to privileges, when loaning its money not enjoyed generally by banks, trust companies, and other corporations and individuals." 18 A.L.R. 1149.

### On Rehearing.

GARDNER, Chief Justice.

Based upon the theory that the foregoing opinion by Mr. Justice BROWN constituted an opinion by the Court as an extension of the original opinion in response to applica-

tion for rehearing, counsel for appellee have re-argued the entire case upon a second application for rehearing. The first paragraph of the opinion of Mr. Justice BROWN on rehearing would appear to be but a re-affirmation of the conclusion of the Court reached upon the original consideration of the case—that the policy was not subject to forfeiture on March 25th, 1938, and that, as a consequence, the Court erred in giving the affirmative charge for the defendant. But further discussion in this opinion of Mr. Justice BROWN constitutes only his individual views, and was not intended as expressing the views of the Court. Perhaps the manner of presentation of this matter on rehearing has inadvertently led to some confusion of counsel, and it is, therefore, thought proper that a more definite explanation of the holding of the Court be made.

As disclosed from the original opinion, a majority of the Court, consisting of GARDNER, C. J., FOSTER, LIVINGSTON, and LAWSON, JJ., were of the opinion there had been no forfeiture of the policy, and their conclusion was confined to that question alone. Under the undisputed evidence in the case, and indeed under the evidence furnished by the appellee insurance company, unless interest is to be added upon interest, on March 25th, 1938, the company was due on the policy a balance of $1.21. The date of March 25th was the date of interest payment. The insured died in August, 1938, and as stated in the original opinion, "the company could not at a later date short of the next interest payment period, March 25, 1939, forfeit the policy." Of course, it was conceded by all parties that if there was ambiguity in the contract it should be construed most strongly against the insurance company. There was no stipulation in the contract that added interest should bear interest, differing materially in this respect from the provisions found in Penn Mutual Insurance Co. v. Bancroft, 207 Ala. 617, 93 So. 566, 28 A. L.R. 1102.

Construing the contract, therefore, as one providing for simple interest only, and the undisputed evidence disclosing that under such construction the company was, on March 25th, 1938, due a balance of $1.21, the majority of the Court was of the opinion there was no forfeiture of the policy, and of consequence, the plaintiff was entitled to recover. The majority, therefore, consid·

ered this ended the case, and no occasion was presented to enter into a discussion of any other question. If plaintiff undisputedly was entitled to recover, the Court could see no reason for a consumption of time upon a question which could have no bearing upon the case. Consequently, the concurrence was as above indicated. But the discussion in the opinion by Mr. Justice BROWN, both upon original consideration of the cause and upon rehearing, has led counsel for appellee to assume that the Court has reflected upon the soundness of the case of Penn Mutual Life Insurance Co. v. Bancroft, supra. This assumption is unfounded. The writer was the author of the opinion in the Bancroft case, and well remembers the labor spent upon it. The opinion was adopted by the Court after careful consideration, the rehearing having been denied in June, 1922, and in 1927 the principle of the Bancroft case was re-affirmed in Jones v. Mutual Life Insurance Co., 216 Ala. 437, 113 So. 314, 54 A.L.R. 1068, all the Justices concurring. It has been approvingly cited in other of our cases, among them, Travelers' Insurance Co. v. Williams, 22 Ala.App. 7, 112 So. 99, certiorari denied 215 Ala. 603, 112 So. 101; Equitable Life Assurance Soc. v. Brandt, 240 Ala. 260, 198 So. 595, 134 A.L.R. 555. Both the Bancroft and Jones cases, supra, are found cited in the annotations of 126 A. L.R. 102; 54 A.L.R. 1068 (where the Jones case is reported in full), and 76 A.L.R. 717.

■ Speaking of contracts of this character, in the Bancroft case [207 Ala. 617, 93 So. 567, 28 A.L.R. 1102] this Court observed: "Some method, therefore, of enforcement of such contracts, other than sale, has been resorted to, and it has been held by the great weight of authority that agreements of this character, for the cancellation of a policy at the cash surrender value, are not inconsistent with sound public policy or violative of any of the substantial rights of the pledgor."

We quoted approvingly from the Minnesota Court, Palmer v. Mutual Life Ins. Co., 114 Minn. 1, 130 N.W. 250, Ann.Cas.1912B, 957, the expression: "On the contrary, it is a reasonable and practical method of bringing the contract to final termination." And we further added in the Bancroft case: "The cancellation of the policy by the defendant company was but a method for the enforcement of the foreclosure of the pledge—a practical method of bringing the

transaction to a final termination. Such agreements have been sanctioned by numerous authorities."

In view of the confusion which has arisen, and the misunderstanding of counsel in this cause as to the holding of the Court in the instant case, we have thought it advisable to thus respond to this second application for rehearing and to state our reaffirmation of the Bancroft and Jones cases, the soundness of which has never heretofore been questioned. We adhere, however, to our original construction of the contract here involved and to the view there was no forfeiture.

This ends the case and renders unnecessary the consideration of any other question. Yet in view of the misunderstanding which appears to have arisen, we thought it not inappropriate to here reaffirm the soundness of the Bancroft and Jones cases. The application will be denied.

Application overruled.

THOMAS, FOSTER, LIVINGSTON, and LAWSON, JJ., concur.