**GUSTIN v. SUN LIFE ASSUR. CO. OF CANADA.**

No. 9981.

Circuit Court of Appeals, Sixth Circuit.

Dec. 13, 1945.

Rehearing Denied March 25, 1946.

Max D. Gustin, of Cleveland, Ohio (Harrison & Marshman, M. C. Harrison, and Max D. Gustin, all of Cleveland, Ohio, on the brief), for appellant.

C. W. Sellers, of Cleveland, Ohio (C. W. Sellers, R. M. MacArthur, and Thompson, Hine & Flory, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

The principal question presented in this appeal is the validity under Ohio law of certain insurance loan agreements which provided that compound interest should be

paid on interest due under the policy loans. Appellant, an administrator, sued to recover on a policy of insurance issued on the life of his decedent, claiming that at the time of the death of the decedent the policy was in force as extended insurance in the amount of $3,803. The decedent had received various sums from the insurance company in eight policy loans which were made from 1931 to 1938 inclusive. The insurance company contended that the loans and the interest due thereon had consumed all amounts due under the policy; that it lapsed for nonpayment of premium on September 12, 1939, and that the extended term insurance which gave a longer life to the policy expired some four months previous to the decedent's death. It is conceded that if the insurance company was entitled to charge compound interest alleged to be due under the policy loans, the appellant is not entitled to recover. The District Court held that under the policy and under the policy loan agreements executed by the decedent, the method followed by the insurance company in computing the compounding interest was proper. Summary judgment was rendered in favor of the insurance company.

The policy is a non-standard form, written in general in conformity with the pertinent provisions of Section 9420, General Code of Ohio.[1] It contained the usual provision that the policy, together with the application, constituted the entire contract between the parties. The insurance policy differentiated sharply between compound interest and other interest, stating in several provisions that compound interest should be collected. The provision for reinstatement after default in the payment of any premium, declares that the policy may be reinstated "upon payment of all arrears of premium and repayment of any cash payment made under the terms of Privilege VII(b) with interest on both at a rate not exceeding six per cent per annum compounded yearly, and by reinstatement with interest of any indebtedness existing at the time of default."

Thus the policy expressly provided as to any indebtedness existing at the time of default that "interest" should be charged on reinstatement, rather than "compound interest." Under other paragraphs of the policy, written with the evident purpose of inducing an insured to accumulate dividends due and payable in cash, or to accept the money in installments, specific differentiations are made between the payment of "interest" and of "compound interest." It is evident that the insurance company expressly and deliberately provided for compound interest where it so desired. But in writing the paragraph with reference to loans, it failed to include any statement which either expressly or impliedly permitted the compounding of interest. This paragraph reads as follows:

"After three full years' premiums shall have been paid, the Company will advance to the assured upon proper assignment of

---

[1] Section 9420, General Code of Ohio.
"No policy of life insurance in form other than as provided in sections ninety-four hundred and twelve to ninety-four hundred and seventeen, both inclusive, shall be issued or delivered in this state or be issued by a life insurance company organized under the laws of this state unless the same shall contain the following provisions: * * *

"(7) A provision that after three full years' premiums have been paid, the company at any time, while the policy is in force, will advance, on proper assignment of the policy and on sole security thereof, at a specified rate of interest, a sum equal to, or at the option of the owner of the policy, less than, the reserve at the end of the current policy year on the policy and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserve, less a sum not more than two and one-half per centum of the amount insured by the policy and

of any dividend additions thereto; and that the company will deduct from such loan value any existing indebtedness on the policy and any unpaid balance of the premium for the current policy year, and may collect interest in advance on the loan to the end of the current policy year; which provision may further provide that such loan may be deferred for not exceeding six months after the application therefor is made. It shall be further stipulated in the policy that failure to repay any such advance or to pay interest shall not avoid the policy unless the total indebtedness thereon to the company shall equal or exceed such loan value at the time of such failure nor until one month after notice shall have been mailed by the company to the last known address of insured and of the assignee, if any.

"No condition other than as herein provided shall be exacted as a prerequisite to any such advance. * * *"

this policy, and on the sole security hereof, any amount not exceeding the cash value of the policy as provided for in Privilege V above. The rate of interest shall be six per cent per annum. This privilege is subject to the condition that there is no legal restriction to the contrary and that any indebtedness to the Company on this policy shall be deducted from the said loan. The Company may also collect interest in advance to the end of the current policy year, subject to a proper discount allowance. Failure to pay any such loan or the interest thereon shall not void the policy unless the total indebtedness shall equal or exceed such loan value at the time of such failure, nor until one month after notice shall have been mailed by the Company to the last known address of the assured and of the assignee, if any."

Policy loan agreements executed by the decedent over the years 1931 to 1938, inclusive, contained identical provisions with reference to computation of interest, reading as follows: "The Loan shall bear interest at the rate of six per cent. per annum from the date hereof payable yearly, on the 12th day of September in each year, and it is especially agreed that, if such interest be not paid on the date on which it becomes due, it shall be capitalized and added to the principal sum, and shall thenceforth carry interest at the rate aforesaid."

■ Section 9421-2, General Code of Ohio, which provides for the compounding of interest upon interest due on policy or premium loans under both standard and non-standard policies, was enacted in 1933, effective September 28, 1933, and does not govern this policy, which was issued in 1928, nor does it govern the first two loan agreements, which were executed in 1931 and 1932 respectively.

The insurance company contends that the phrase "six per cent per annum" in the policy means compound interest; but we think this contention has no merit. It would have been a simple matter for the insurance company, if it intended that the interest should be compounded, to insert a specific provision to that effect; but it did not do so. The phrase has been construed by the Ohio courts, but never has been construed to mean six per cent per annum compounded annually. The phrase "six per cent per annum" means that the interest is to be paid at six per cent by the year instead of by the six months or any other period. Patterson v. McNeeley, 16

Ohio St. 348. The term "per annum" is intended only as a measure of the rate with respect to time and does not require the payment of interest annually. Or, as stated in Hunter v. Hall, 14 Ohio Cir.Ct.R. 425, 430, "if a party seeks to have an instrument draw interest, with interest payable annually, it must be expressed in that form." Since no after-maturity rate was provided for, the damage rate is the same as the contract rate, that is, six per cent per annum. Hackett, Receiver v. Kripke, 62 Ohio App. 89, 93, 94, 23 N.E.2d 438. Cf. Commercial National Bank v. Hall, 18 O.L.A. 456. Neither these, nor any decision cited excepting Johnson v. Penn Mutual Life Ins. Co., an unreported case hereinafter discussed, afford support for appellant's contention that the phrase "six per cent per annum" should be construed to mean six per cent compounded annually.

■ While Section 9420(7) denominates so-called policy loans sometimes as loans and sometimes as advances, they are in essence really not loans at all. Cf. New York Life Ins. Co. v. Board of Assessors for Parish of Orleans, C.C., 158 F. 462, affirmed 216 U.S. 517, 30 S.Ct. 385, 386, 54 L.Ed. 597. In the policy the insurer, which contemplates periodical receipts of money from the insured, agrees to pay a part of this money in advance of maturity of the policy. As stated by Mr. Justice Holmes in the opinion affirming the cited case, "as the plaintiff never advances more than it already is absolutely bound for under the policy, it has no interest in creating a personal liability. * * * The so-called liability of the policy holder never exists as a personal liability, it never is a debt, but is merely a deduction in account from the sum" that the insurer ultimately must pay. The same doctrine was followed in the opinion by Mr. Chief Justice Hughes in Williams v. Union Central Life Ins. Co., 291 U.S. 170, 179, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693. Cf. Goodwin v. Northwestern Mutual Life Ins. Co., 196 Wash. 391, 83 P.2d 831; Murray v. Prudential Ins. Co., 144 Pa.Super. 178, 18 A.2d 820.

■ The universal rule that a policy is to be construed favorably to the insured is followed in Ohio. Snapp v. Merchants & Manufacturers Ins. Co., 8 Ohio St. 458, 459; Great American Mutual Indemnity Co. v. Jones, 111 Ohio St. 84, 144 N.E. 596, 35 A.L.R. 1023. This conclusion is reached in reliance upon the rule of interpretation that when one party to a contract prepares

it and is responsible 'for the language employed, and the language contains ambiguity or words of doubtful meaning, the contract will be strictly construed against the party employing the language, and will be construed in favor of the other party. Mumaw v. Western & Southern Life Ins. Co., 97 Ohio St. 1, 119 N.E. 132; Fire Association of Philadelphia v. Agresta, 115 Ohio St. 426, 154 N.E. 723. The rule is strictly applied when the question involves the meaning of a provision for forfeiture such as that under which the insurance company declared the policy in suit lapsed for non-payment of premium. Schultz v. Insurance Co., 40 Ohio St. 217, 221, 48 Am.Rep. 676; Webster v. Dwelling House Ins. Co., 53 Ohio St. 558, 42 N.E. 546, 30 L.R.A. 719, 53 Am.St.Rep. 658; 22 Ohio Jur. § 185. Applying the logic of these decisions, we conclude that the policy plainly provided for simple interest at six per cent upon all policy loans, and that no more than simple interest could be exacted under this contract. This conclusion is strengthened by the provisions of Section 9420(7), which after providing for loans "at a specified rate of interest" without any provision for compound interest, concludes that "No condition other than as herein provided shall be exacted as a prerequisite to any such advance." Obviously the provisions governing standard policies, which are relied on by the insurance company, do not aid us in construing the policy written in compliance with the non-standard provision. Section 9421-2, General Code of Ohio, enacted in 1933, which relates to non-standard policies, could not curtail nor alter the rights which vested in 1928, when the policy here was executed, namely, that advances should be made on the sole security of the policy at a rate of interest of six per cent per annum.

The appellant claims, however, and the District Court held, that the policy loan agreements executed during the years 1931 to 1938, inclusive, govern this case. These agreements each specifically provided for the computation of compound interest, and several of them were executed subsequently to the enactment of Section 9421-2, General Code. As to these agreements, under familiar principles the statutory provision would be read into and become part of the agreements. Cf. John Hancock Mutual Life Ins. Co. v. Snyder, 52 Ohio App. 438, 3 N.E.2d 898. If the loan agreements are valid, the insurer has correctly computed the interest by compounding it. But the 'policy loan agreements are entirely lacking in consideration. The making of the policy loan does not constitute consideration, for in the policy itself, as a part of the consideration for the original contract, the insurer specifically agreed to make advancements or loans on the sole security of the policy. The insurance company contends that since it failed to collect interest in advance, a privilege which it had under the policy, this constitutes a valid consideration. However, there is nothing in the record to show that the parties considered this feature to be a consideration for a totally new contract. It does not appear that the decedent had any knowledge of the accounting practices of insurance companies, nor of their custom to charge compound interest, relied on by the insurance company. The insured received advances under the policy loan agreements to which he was already entitled by virtue of the policy, and therefore these contracts, whether considered as private agreements or in light of Section 9421-2, General Code of Ohio, did not authorize the compounding of interest upon these policy loans. Even more important is the fact that the policy loan agreements, in imposing compound interest, are not only contrary to the simple interest clause of the policy, but also they violate the provision of Section 9420(7), that no conditions other than those contained in the statute shall be exacted as a prerequisite to any policy loans. This provision certainly requires that as to the policy executed in 1928, prior to the enactment of the compound interest section, § 9421-2, the rate of interest on policy loans could not be raised from simple interest to compound interest. Section 9420(7) provides that the advances should be made "at a specified rate of interest," which was specified in the policy as six per cent annum. To increase this interest was to exact a condition different from that contained in the statute as a prerequisite to the policy loans.

The receipt by the decedent of the advances due him under the policy does not raise an estoppel. As stated by the insurance company in its brief, the sums received on the insurance loans were money belonging to the decedent, and the fact that he received less than he was entitled to under the policy, because of the compounding of the interest, in no way misled the insurance company.

The rulings of courts of last resort of other states are at variance upon this ques-

tion. In accord with our conclusion on the merits are Stauffer v. Northwestern Mutual Life Ins. Co., 184 Wash. 431, 51 P.2d 390; Goodwin v. Northwestern Mutual Life Ins. Co., supra; Murray v. Prudential Ins. Co., supra; Smith v. Penn Mutual Life Ins. Co., 244 Ala. 610, 14 So.2d 690; McWilliams v. Northwestern Mutual Life Ins. Co., 285 Ky. 192, 147 S.W.2d 79; contra, State ex rel. Northwestern Mutual Life Ins. Co. v. Bland, Mo.Sup., 189 S.W.2d 542; Bean v. Minnesota Mutual Life Ins. Co., 151 Minn. 41, 185 N.W.946; Patten v. Mutual Benefit Life Ins. Co., 192 S.C. 189, 6 S.E.2d 26, 126 A.L.R. 91; Penn Mutual Life Insurance Co. v. Marshall, 49 Ga.App. 287, 175 S.E. 412. The contract here, however, is governed by Ohio law.

Our conclusion that the policy loan agreements are invalid in this particular case is in accord with the general principles of insurance law applied in Ohio. While there is no decision of the Supreme Court of Ohio in a case substantially similar to this, we think the Ohio decisions, construed together with the applicable statutes, call for reversal of the judgment.

The Ohio decisions relied on by the insurance company, with one exception, we view as not being in point upon the controlling question, which concerns the precise terms of the contract entered into by the parties. The exception is the unreported decision of the Court of Appeals of Cuyahoga County, Ohio, in Johnson v. Penn Mutual Life Ins. Co., cause No. 455,-583 in the Court of Common Pleas of Cuyahoga County, and cause No. 17,113 in the Court of Appeals of Cuyahoga County. The case was taken to the Supreme Court of Ohio on motion to certify the record, and also by filing an appeal as of right, upon the ground that a debatable constitutional question was involved. The motion to certify the record was overruled, and the appeal filed as of right was dismissed. 136 Ohio St. 39, 23 N.E.2d 501. Under the principles declared in West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956, this decision of the inferior state court is binding upon the federal court. If it squarely determines the controlling question in the instant case, we follow it regardless of the logic of the considerations heretofore expressed.

An examination of the pleadings and evidence presented in the Johnson case shows that one of the plaintiff's principal contentions in the trial court, the Court of Appeals, and the Supreme Court of Ohio, was that the insurance company charged compound interest upon policy loans which, if credited to the principal, would have entitled the insured upon surrender of his policy to a sum considerably in excess of that received as cash surrender value, and that as a result the policy was in full force and effect at the time of the death of the insured. The Court of Common Pleas found that the defendant did not pay the insured the full cash surrender value of the policy at the time of surrender, having charged the insured interest contrary to the terms and provisions of the policy and the statutes of Ohio, and gave judgment for the plaintiff.

One of the assignments of error filed in the Court of Appeals was that the trial court had erred in this finding. The question of the validity of compound interest was discussed in the briefs of both parties in the appellate court. The Court of Appeals reversed the judgment of the Court of Common Pleas and entered judgment for the defendant, upon the ground that "by law and the terms of the insurance contract, the defendant was authorized to make the computation it did and the policy lapsed before the death of the insured." Since the Supreme Court refused to allow the motion to certify the record and dismissed the petition filed as of right, the judgment of the Court of Appeals is the final judgment in the case.

The appellant contends that the Johnson case is distinguished by the fact that the insured there had been an insurance agent, and might be considered to have contracted with the regulations of the insurance company in mind. We think this is a distinction without a difference. The policy there, as here, provided for simple interest "at five per cent per annum." Assuming that the insured was acquainted with the insurer's method of operation in that case, there, as here, there was no evidence of consideration for the policy loan agreements, which in substance contained a provision for compound interest, stating that "Any interest not paid when due shall be added to the principal." The case is squarely in point as to the material facts. We think that the Johnson decision runs counter to the spirit and general reasoning of the decisions of the Supreme Court of Ohio above cited; but in view of its ruling made on October 4, 1939, not disapproving the conclusion of the Court of Appeals upon the identical ques-

452

tion presented here, we conclude that "there is no convincing evidence that the law of the state is otherwise" than as declared in the Johnson case. Six Companies of California v. Joint Highway Dist. No. 13 of California, 311 U.S. 180, 188, 61 S. Ct. 186, 85 L.Ed. 114. It cannot be said with assurance that the Supreme Court of Ohio will not follow the doctrine of the Johnson case in the future, and this fact compels affirmance of the judgment. West v. American Telephone & Telegraph Co., supra; Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109; Meredith v. City of Winter Haven, 320 U.S. 228, 234, 64 S.Ct. 7, 88 L.Ed. 9.

Judgment affirmed.

SIMONS, Circuit Judge, concurs in result.